SALT LAKE CITY v. INDUSTRIAL COMMISSION et al.

No. 5893. Decided December 29, 1937. (74 P. [2d] 657.)

Rehearing denied March 18, 1938.

*Fisher Harris,* City Atty., and *E. R. Christensen* and *Gerald Irvine,* Asst. City Attys., all of Salt Lake City, for plaintiff.

*J. Allan Crockett* and *A. N. Ferro,* both of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review an award of compensation to Paul Eggertz for the loss of use of his left eye. On June 26, 1929, while employed as a waterman by Salt Lake City at Nibley Park, applicant Eggertz was struck in the left eye with a golf ball. He was treated at the Holy Cross Hospital by Dr. Welsh, who was paid $25 by Salt Lake City for services rendered. The city also paid $29 for hospitalization and $17.24 which represented 1-2/7 weeks' compensation at the rate of $13.41 per week from June 29, 1929, to July 7, 1929. He returned to work on July 8, 1929, the last compensation was paid July 15, 1929, and the last medical attention furnished by the city was on or about January 15, 1930. On August 7, 1929, the city filed with the Industrial Commission its first report of injury on furnished forms. Its final report was filed October 3, 1929. No application for compensation was filed for the applicant for the disability from June 29, to July 7, 1929.

At the time applicant resumed his employment, he believed his left eye was healed and did not know that the injury would result in further disability. For the last 3 years preceding the filing of a petition with Salt Lake City, Eggertz was employed as a watchman in the Beason building and before that time and after the completion of the 1929 golf season he had work off and on as a common laborer which did not require the use of his eyes for close work. For a considerable time before he consulted Dr. Hen-

derson, his eyesight had been getting worse but he did not realize that any real disability would result from the injury until a few days before he consulted the doctor. Dr. Henderson and Dr. Raile both agree that he has lost the entire sight of the left eye and unless it is removed he may lose the sight of his right eye. The blindness to the left eye was due to the injury he received on June 26, 1929. The above facts were practically all stipulated. Those which were not were not disputed.

Applicant then filed on May 13, 1936, his claim for compensation for the loss of use of his left eye, stating that it had to be removed. The commission found the facts to be substantially as above set out. It granted compensation. In its findings it found that the loss of applicant's eye was unknown and unforseeable from the time he returned to work in 1929 to January of 1936 and that there was good cause for failure to file the claim for the loss of the eye for the period of nearly 7 years. The city pleaded the 1 year statute of limitation and relied on the cases of *Utah Consolidated Min. Co.* v. *Industrial Comm.*, 57 Utah 279, 194 P. 657, 16 A. L. R. 458; *Inter-Urban Construction Co.* v. *Industrial Comm.*, 58 Utah 310, 199 P. 157; *Spring Canyon Coal Co.* v. *Industrial Comm.*, 58 Utah 608, 201 P. 173; *Aetna Life Insurance Co.* v. *Industrial Comm.*, 66 Utah 235, 241 P. 223; *Maryland Casualty Co.* v. *Industrial Comm.*, 74 Utah 170, 278 P. 60, and *Rodriquez* v. *Industrial Comm.*, 86 Utah 266, 38 P. 2d 748.

This line of cases is based on the Utah Consolidated Mining Company Case which held that the applicant must file his application for compensation for disability within 1 year from the date of the accident. In this regard we think the opinion in that case and the cases which followed it were in error. Since it does not involve a rule of property on which rights were acquired and maintained, we think the error should at this time be rectified. We think Section 104-2-26, R. S. Utah 1933, which was at the time of decision of the Utah Consolidated Mining Com-

pany Case known as Section 6468, Comp. Laws Utah 1917, was applicable as a statute of limitation, but that it begins to run, not from the time of accident, but from the time of the employer's failure to pay compensation for disability when the disability can be ascertained and the duty to pay compensation arises. Holding that the statute begins to run from the time of accident instead of from the time of compensable disability or loss, in effect makes the statute begin to run before the cause of action accrues. In negligence cases the cause of action arises from the negligence which causes the accident and therefore the statute begins to run from the time the negligence operated on plaintiff, which would be at the time of the accident. But no such rule applies in compensation cases. Compensation does not depend upon negligence. The rule which applies to contracts is applicable. The Compensation Act, Rev. St. 1933, 42-1-1 et seq. imposes a duty on employers to pay compensation to employees who suffer disability from an injury by accident arising out of or in the course of the employment. Not until there is an accident and injury and a disability or loss from the injury does the duty to pay arise. A mere accident does not impose the duty to pay. Accident plus injury therefrom does not impose the duty. But accident plus injury which results in disability or loss gives rise to the duty to pay. When the employer refuses or ceases to pay compensation, the cause of action against him arises.

The cause of action for loss by fire under a fire insurance policy occurs not from a fire alone, but because of loss by the fire and refusal of the insurance company to pay. Where one causes loss to another by fire because of negligence, the cause of action being a tort action arises at the time of the negligence which caused the loss. In compensation the duty to pay compensation is imposed by law rather than by contract, but the cause of action for the compensation does not arise until the loss is suffered and the employer fails or ceases to pay, and the statute of limitations runs from such time. Any other view mires us in a Stygian bog.

Such being the rule, the cause of action for compensation for the complete loss of the eyesight arose not before the complete loss of the eyesight, and the statute could not begin to run before that time. Application for compensation for total blindness of the left eye was made on May 13, 1936, which application specified the eye would have to be enucleated. From the facts stipulated it reasonably appears that this complete loss of function had not occurred or was not known before 1 year from May 13, 1936. It appears that the applicant petitioned the city to pay compensation within a reasonable time after he discovered the total blindness in the left eye and that certainly the application for compensation made to the commission was made within 1 year from the time the city refused to pay the compensation.

It follows, therefore, that the applicant may obtain compensation for 100 weeks for blindness of the left eye, or if the eye is to be enucleated, 120 weeks for the loss of the eye. The award of the commission must be sustained. Such is the order. Costs of appeal are awarded to the applicant.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON JJ., concur.