STATE INS. FUND v. INDUSTRIAL COMMISSION et al.

No. 7274.   Decided September 1, 1949.   (209 P. 2d 558.)

See 71 C. J., Workmen's Compensation Acts, sec. 735. Ignorance of compensable nature of injury as affecting statute of limitations, see note, 91 A. L. R. 1400. See, also, 58 Am. Jur. 849.

*F. A. Trottier,* Salt Lake City, for plaintiff.

*Grover A. Giles,* Attorney General, *Pugsley, Hayes & Rampton,* Salt Lake City, for defendants.

WADE, Justice.

Our problem is to determine when a cause of action arises for compensation from an occupational disease. The In-

dustrial Commission awarded applicant compensation for such disability holding that his cause of action arose when his doctor first determined that he was suffering compensable disability. The State Insurance Fund contends that the cause of action arose when applicant became totally disabled and ceased work regardless of whether he knew that his disability was total, occupationally caused and compensable.

On February 8, 1948, applicant, Elbert I. Lunnen, laid off from his work as a welder after 22 years of continuous employment by Lundin & May Foundry and Machine Company on account of difficulty in breathing and since then has been unable to resume his work. His employment almost continuously exposed him to harmful fumes and for the last 5 or 6 years he has suffered from shortness of breath from such exposure which has progressively become worse and which was especially bad when he worked in bronze welding. During that time he had repeatedly called this condition to the attention of his employer and now and then as a result of such condition was compelled to lay off from his work for from 3 to 8 days at a time. The last of such lay offs before he finally discontinued his work was in March, 1947, when he took six weeks off during which time he was hospitalized.

When applicant laid off on February 8th he considered his disability only temporary but believed that it was due to employment exposure to harmful fumes. He was aware that his disability might be compensable for he visited the office of the Industrial Commission, explained his condition to an attendant there and received some blank forms which he later left with his doctor, but he had no definite information that his kind of disability was compensable under the Act. His first doctor apparently did not realize the urgency of filing his claim with the commission for without thoroughly investigating his condition, he advised applicant to quit his job and go to Arizona. On July 9, 1948, applicant's condition being unimproved, he went to another doctor who after a thorough examination and observation and the taking of X-rays on July 28, concluded and advised applicant

that his disability was total and permanent, was the result of his employment exposure and compensable under our Act. An August 2d, thereafter, applicant filed his claim with the commission. This claim was on an accident form and was later, on September 17, 1948, substituted by a claim on the correct form. If his cause of action arose when he learned that he had suffered compensable disability then his application was in time, but if it arose when he quit work, then it was too late. Section 42-1a-49, U. C. A. 1943, provides:

"The right to compensation under this act for disability or death from an occupational disease shall be forever barred unless written claim is filed with the commission * * *:

"(a) If * * * based upon silicosis it must be filed within one year after the cause of action arises.

"(b) If * * * *based upon a disease other than silicosis it must be filed within sixty days after the cause of action arises,* except in case of benzol or its derivatives when it must be filed within ninety days." (Emphasis added.)

Since applicant's disease was neither silicosis nor benzol or its derivatives the period of limitation within which to file his claim was only sixty days after his cause of action arose. Plaintiff's attorney concedes that the time is so short that hardship is apt to result in cases like this. If plaintiff's contention is correct then the time is so short than an employee who becomes disabled cannot lose any time after total disability occurs in determining the nature and extent of his disability and whether it is compensable. In any event, if he fails to recognize the urgency of the situation the time will elapse before he discovers that his disability is compensable. A construction which requires such undue haste, which is fraught with such potential hardships is not in keeping with the spirit of a statute of limitations, the purpose of which is to put at rest stale claims.

This question is one of first impression in this court under this statute but in *Salt Lake City* v. *Industrial Commission*, 93 Utah 510, 74 P. 2d 657, we passed on a somewhat similar

question. There we were dealing with the general statute of limitations as applied to the filing of a claim for workmen's compensation. In that case the applicant in the course of his employment by Salt Lake City was, on June 26, 1929, struck in his eye by a golf ball and thereby disabled for a short period of time for which he was paid compensation without filing a claim therefor. In January, 1936, this eye began to give him trouble again, and later his doctors advised him that he was going to lose the sight in his eye as the result of the injury thereto in 1929 and on May 13, 1936, he filed his claim for compensation for such loss. In holding that the claim was filed in time we said on pages 512-514 of 93 Utah Reports, on page 658 of 74 P. 2d:

"* * * We think Section 104-2-26, R. S. Utah 1933, * * * was applicable as a statute of limitations, but *that it begins to run,* not from the time of the accident, but *from the time of the employer's failure to pay compensation for disability when the disability can be ascertained* and the duty to pay compensation arises. * * * The Compensation Act * * * imposes a duty on employers to pay compensation to employees who suffer disability from an injury by accident arising out of or in the course of the employment. *Not until there is* an accident and injury and *disability or loss from the injury does the duty to pay arise.* A mere accident does not impose the duty to pay. Accident plus injury therefrom does not impose the duty. But accident *plus injury which results in disability or loss gives rise to the duty to pay. When the employer refuses or ceases to pay compensation, the cause of action against him arises.*

"The cause of action for loss by fire under a fire insurance policy occurs not from a fire alone, *but because of loss by the fire and refusal of the insurance company to pay.* * * * the duty to pay compensation is imposed by law rather than by contract, but *the cause of action for the compensation does not arise until the loss is suffered and the employer fails or ceases to pay,* and the statute of limitations runs from such time. * * *

"*It appears that the applicant petitioned the city to pay compensation within a reasonable time after he discovered the total blindness in the 'left eye and that certainly the application for' compensation made to the commission was made within 1 year from the time the city refused to pay the compensation.*" (Emphasis ours.)

Section 104-2-26 as supplemented by Section 104-2-1 both sections of R. S. U. 1933, provide:

(104-2-1)

"Civil actions can be commenced only within the periods prescribed in this chapter, after the cause of action shall have accrued  *  *  *."

(104-2-26)

"Within one year:
"(1) An action for liability created  *  *  *  by the statutes of this state  *  *  *."

While those statutes are general and not applicable to only one subject and there the wording is different from the one here involved, there is no substantial difference in the meaning. So what we said in that case is equally applicable to this case. In that case the applicant filed his claim within one year after he was disabled the second time, so all that was necessary in order to conclude that his claim was not barred was to hold that the action did not accrue or arise until the applicant was disabled. But we did not stop at that but suggested two other tests in determining when the cause arises: (1) That it arises only when the disability is ascertainable; or (2) When the employer refuses or ceases to pay compensation. If we hold in all cases that the cause of action arises when the disability occurs then an applicant might well, under this sixty day period, never have reason to believe that his disability is occupationally caused and therefor compensable, before the expiration of the prescribed period. On the other hand, if we hold that a cause of action does not arise until the employer refuses to pay compensation the employee by failing to demand payment can postpone the accrual of a cause of action indefinitely. So neither of these two rules would work satisfactorily.

The better rule which is in accord with reason and justice, is that a cause of action does not arise until an ascertainable disability and compensable disability results. This is the rule adopted in California. See *Marsh* v. *Industrial Accident Commission*, 217 Cal. 338, 18 P. 2d 933, 938, 86 A. L. R. 563, and annotation beginning at page 572. There the court was dealing with three cases of silicosis, which was held to

be compensable under their Workmen's Compensation Act. The court held that the limitations period did not commence to run until

"the time when the accumulated effects ·culminate in a disability traceable to the latent disease as the primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent that a compensable injury was sustained."

The court held that in one of the cases the claim was not filed in time and that as to the other two the evidence did not sufficiently disclose when the compensable injuries with due diligence were discoverable. But it was held and repeatedly emphaisized that

"an employee is not to be deprived of compensation because he fails to make a correct medical diagnosis. *Winthrop* v. *Industrial Accident Comm.*, 213 Cal. 351, 2 P. 2d 142; *Singer* v. *Industrial Accident Comm.*, 105 Cal. App. 374, 376, 287 P. 567."

The California case was dealing with a situation where the disabled employees by due diligence were unable to discover that their disabilities were occupationally caused, not with cases where they failed to realize their rights under the law. There is nothing in that case nor in the cases therein considered or the cases annotated in A. L. R. which indicate that the fact that applicant, on account of not knowing the law, had not realized that his disability was compensable or the time within which his claim must be filed, would prevent the cause of action from arising. The cause of action arises in this kind of a case when the employee suffers compensable disability under the act and could by reasonable diligence ascertain that his disability was employment caused and by its nature compensable. But ignorance of the requirements of the law does not postpone the accrual of a cause of action.

Here, as·in the California case, the evidence does not fully disclose whether the applicant used due diligence to ascertain whether his disability was compensable or not. While it is evident that he believed that his disability was caused

by the harmful fumes which he was exposed to in the course of his employment, and that he obtained and took to his doctor certain blanks from the Industrial Commission to be filled out in connection with a claim for compensation, it is not clear why a thorough examination was not made at that time. If he failed to discover at that time that his disability was compensable because the doctor did not correctly diagnose his case, and he was thereby misled into believing that his disability was not occupationally caused or by its nature was not compensable, and he acted reasonably under the circumstances in not having a complete examination made sooner, then his cause of action is not barred. But if on account of his own failure to press his case or have a complete examination made under circumstances which would reasonably put him on notice that he was probably entitled to compensation, he failed to discover that his disability was compensable, then the fault is his own and he connot recover.

Because the facts before the commission were insufficient to determine when the cause of action arose, the award is set aside and the matter remanded to the Industrial Commission for further action.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring in the result).

It appears to me that in this sort of case the reasoning in the case of *Salt Lake City* v. *Industrial Commission,* 93 Utah 510, 74 P. 2d 657, is applicable. The employer's liability is imposed by statute; the carrier's liability by contract made pursuant to the statute for the benefit of any person disabled under the terms of the statute. It follows, therefore, that the conditions antecedent to the accrual of a cause of action are: (1) A compensable disability under the terms of the statute. (2) Reasonable diligence in the ascertainment of the extent and nature of the disability and the fact that it

was employment caused. (3) Knowledge of such compensable disability brought home to the responsible employer which is notice to the carrier. (4) Refusal or failure of the responsible employer (viz. his insurance carrier) to meet the obligation to pay compensation within a reasonable time. The cause of action that is the cause for the action against the carrier is under the act, the failure or refusal of the responsible carrier to meet its contractual obligation which does not arise until all three of the previous conditions are or can be fulfilled.

Such holding does not permit the employee, by failing to demand payment, to postpone the accrual of the cause of action indefinitely nor does it in the case where one of several successive employers may be liable, permit the cause of action to arise before it can be ascertained which employer is liable.

I cannot, at the moment, think of any action lying in tort except an action for fraud when the accrual of the cause of action depends upon the ascertainment of a fact. Certainly in actions for damages caused by negligence it is the event of the negligence which causes the damage and not the ascertainment of the extent of the damage which accrues the cause of action. In trespass I think it is the same. In libel and slander it is the event of libelling or slandering and not the event of ascertaining the libel and slander which accrues the cause of action.

In contract it is the event of the breach which gives rise to the cause of action unless the breach is purposely concealed in which case the principle of estoppel may be employed to keep the law logical.

When the obligation is imposed by quasi contract it is the event which imposes the duty in good conscience and equity to make restitution or reparation which accrues the cause of action.

When the obligation is imposed by statute, it is usually refusal or the failure to perform that obligation which gives

rise to the action to enforce it. Witness the case of the industrial injury which causes disability where the obligation to pay compensation arises from the disability caused by the injury, and consequently, the cause of action arises from the failure or refusal to meet that obligation rather than the event of the ascertainment of disability. In the case of disability from industrial disease where disability and especially total disability are reached by a gradual if not an imperceptible process, I can well see why ascertainment of the event of disability may be for practical purposes and for the very fulfillment of the purposes of the statute be the event which gives rise to the cause of action and were this the only theory on which I could sustain the results of the prevailing opinion, I should concur outright. But for logical reasons, I prefer to approach the matter from the contract side which avoids the introduction of an anomaly into the law and to produce a result just as fair to the employer and the employee. And although I agree that law is not necessarily logic, that is not the same as saying that it should not be logical when life and logic may be equally served.

At this time I do not care to commit myself as to whether the failure of a doctor correctly to diagnose a case must be counted within the period in which the employee could by reasonable diligence have ascertained that his disability was employment caused and by its nature compensable. I am willing to send the case back to the commission to obtain information as to why a thorough examination was not made at the time he knew or had reason to believe that his disability was caused by fumes, but I am not prepared to say that if his doctor misled him by a wrong diagnosis that he acted with diligence in not so discovering that fact sooner nor whether he may not have to suffer the consequence of the physician he chose failing to make a proper diagnosis. That may depend on the type of medical skill reasonably available to him in the community where he lives for due diligence in the ascertainment of the cause of a man's disability may contain the element of choosing a doctor who

has the reputation and the standard of skill which may reasonably be expected of doctors in that community as well as the diligence of the employee to continue investigation of his ailment and its cause after he has chosen a doctor and failed to receive relief and the reason for the failure as well as information as to the nature and cause of his disability. But dependent upon the further findings of the commission, we may not be required to pass upon those questions.