369 P.2d 283

WYCOFF COMPANY, Inc., Plaintiff,

v.

PUBLIC SERVICE COMMISSION of Utah, Trailways, Mount Hood Stages, et al., Defendants.

No. 9461.

Supreme Court of Utah.

March 1, 1962.

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for plaintiff.

Walter L. Budge, Atty. Gen., Raymond W. Gee, Asst. Atty. Gen., Wood R. Worsley, John F. Piercey, Irene Warr, Salt Lake City, for defendants.

CROCKETT, Justice.

This proceeding challenges an order of the Public Service Commission imposing a penalty of $18,500 upon Wycoff Company, Inc. for repeated violations of its common motor carrier operating authority.

Wycoff has for many years held rights as a motor carrier to haul certain items requiring express service. The particular phase of its authority with which we are here concerned (Certificate of Convenience and Necessity No. 1162, Sub. 2 issued January 27, 1958) permits it:

"* * * to operate as a common motor carrier by motor vehicle of general commodities of 100 pounds or less in weight, in express service, between all points and places in the state of Utah, according to schedules filed herein except [certain exceptions noted]; said authority to be subject to the following restrictions:

"(a) Applicant *shall be limited to* the transportation of *shipments of not to exceed 100 pounds* upon a weight basis. *Shipments will not be separated for the purpose of avoiding this restriction.*

"(b) Applicant *shall not transport in excess of 500 pounds* on a weight basis *of such express items on any one schedule* each way operating over the routes and departing at the times set forth in exhibit 2 in this proceeding.

"(c) * * * (d) * * * (e) * * *.

"(f) *'Shipment'* as used herein *shall refer to commodities moving on a*

*single bill of lading from one consignor to one consignee."* (Emphasis added.)

The origin of this authority to handle small shipments is of some significance in treating the issues here involved. It was initiated as a special fast express service hauling newspapers and movie film over routes served by other regular common carriers of freight. Wycoff has been permitted to take other items such as cut flowers, drugs, blood plasma, and some others, which because of their perishable or emergency nature require fast service. It made an application representing to the Commission that due to its type of service it had many requests to haul small shipments of various other items, and requested authority to transport them. After competing carriers filed protests an agreement was worked out that whatever shipments Wycoff accepted would be limited to 100 pounds shipment by any one shipper and to 500 pounds on any one shipping schedule (that is, on any truck or trucks leaving at one time). Upon that basis the protests were withdrawn and the authority here in question was issued.

We spare the detail of subsequent happenings in regard to this particular authority except these essential facts: Wycoff attempted to have the limitations removed or increased; competing carriers made complaints that Wycoff was continually violating the limitations. In January, 1960, the Commission gave notice to Wycoff and the complaining carriers of a hearing on such complaints. Wycoff filed a demand for a bill of particulars and a motion to stay proceedings. Upon its own motion, pursuant to Sec. 54–4–2, U.C.A.1953, the Commission initiated an investigation of the matter and all interested parties agreed that the hearing should be continued without date.

Meanwhile, the Commission had caused its investigation to be made of Wycoff's operation and, pursuant to notice, on August 4, 1960, a hearing was held. The evidence showed that Wycoff had persistently violated both the 500 pound and the 100 pound restrictions. The Commission found that violations had occurred on 37 separate days. It observed that they would warrant the cancellation of Wycoff's authority, as requested by the complainants, but also indicated that considerations of public interest made it seem unwise to take this extreme measure and that public convenience and necessity would best be served by imposing a penalty as authorized by Sec. 54–7–25(1), U.C.A.1953.

"Violations by utilities—Penalty.— (1) Any public utility which violates or fails to comply with * * * any order, * * * of the commission, in a case in which a penalty has not hereinbefore been provided for such public utilities, is subject to a penalty of not less than $500 nor more than $2,000 for each and every offense."

The Commission assessed a penalty of $500 per day for the 37 days, totaling $18,500.00.

Wycoff takes the position that the penalty provided for is criminal in nature; that it is therefore a judicial function to determine whether the violations charged had been committed; and if so, to impose the penalty prescribed therefor; that accordingly it was not within the authority of the Commission to perform such judicial function.

■ There is no question but that in performing its multifarious duties in franchising and regulating public utilities the Commission is required to and does perform some functions of a judicial or quasi-judicial nature; nor that it is within the competence of the legislature to confer upon the Commission the power to do so and to enforce the law and its regulations made pursuant thereto by administrative procedures. It is well established that this includes the imposition of a monetary penalty for violation of law or lawful orders or regulations promulgated by the Commission within the scope of its administrative responsibility.[1] The fact that our statute provides the Commission with an auxiliary remedy, by going to court if that becomes necessary,[2] does not mean that the Commission cannot impose the penalty prescribed by the Public Utilities Act. In that regard we have the guidance of decisions from other jurisdictions having statutes similar to ours.[3]

■■ We are quite in accord with these averments made about the penalty here under consideration: that it can be very burdensome; that it is similar in nature and therefore somewhat akin to a penalty imposed for violations of law which may be classified as crimes; and that for this reason a high degree of caution should be observed in determining whether there has been a violation by requiring a greater quantum of proof than in ordinary proceedings before the Commission. While there is no basis in law to justify a requirement that the failure to comply with regulations must be proved beyond a reasonable doubt, as urged by the plaintiff, we think that due to the nature and purpose of this statute, it is reasonable and practical to require that the evidence of violation be clear and convincing before the imposition of such a penalty would be justified. However, it cannot be questioned that the evidence here meets that requirement. Wycoff's records themselves reflect the numerous violations. Furthermore, Mr. Wycoff's own testimony went more to ex-

1. See Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917.
2. Sec. 54-7-29.
3. York Tel. & Tel. Co. v. Pennsylvania Public Utility Comm., 181 Pa.Super. 11, 121 A.2d 605 (1956); State v. Cater's Motor Freight System, 27 Wash.2d 661, 179 P.2d 496 (1947); See Davis Adm. Law, Sec. 2. 13.

planations of reasons why he felt he could not comply with the limitations on authority and thus to justify violations than to deny that they occurred.

Affirmed. Costs to defendants.

WADE, C. J., and HENRIOD, Mc-DONOUGH, and CALLISTER, JJ., concur.