ALFRED MEADOWS, Plaintiff-Appellant, *v.* BARNEY J. GRABIEC *et al.,* Defendants-Appellees.

(No. 58718;

First District (3rd Division)—June 6, 1974.

Devereux Bowly and John Henry Schlegel, both of Legal Assistance Foundation, of Chicago, and Gordon H. S. Scott, of Auburn, Maine, for appellant.

William J. Scott, Attorney General, of Chicago (Bonny Sutker Barezky, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Alfred Meadows, brought action in the circuit court of Cook County under the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*), seeking reversal of a decision of defendant Board of Review of the Illinois Department of Labor, dated September 23, 1971, wherein plaintiff was held not eligible for unemployment benefits. Barney J. Grabiec, Director of the Illinois Department of Labor, is also made a defendant. Plaintiff appeals from an order of the trial court affirming the decision of defendant Board of Review.

On appeal, plaintiff contends that the trial court erred in holding as to sections 900 and 901 of the Unemployment Compensation Act (hereinafter sections 900 and 901) (Ill. Rev. Stat. 1969, ch. 48, pars. 490 and 491), that: (1) defendants properly interpreted such statutes; (2) such statutes, as interpreted, do not conflict with the pertinent provisions of

the Federal Social Security Act and the Internal Revenue Code; and (3) such statutes, as interpreted, do not deprive plaintiff and other similarly situated indigents of the equal protection of law and due process of law as guaranteed by article I, section 2, of the Illinois Constitution and the fourteenth amendment of the United States Constitution.

The facts follow.

On April 27, 1959, plaintiff filed a claim for unemployment benefits with the Unemployment Compensation Division, Illinois Department of Labor. He was paid full weekly benefits of $33.50 for each of the consecutive weeks ending June 8, June 15, June 22, June 29 and July 6, 1959. During that period plaintiff neither reported any employment nor the receipt of any wages. In August 1960, the Division received information from the Evanston Hotel that plaintiff had been in its employ as a bellboy from June 1 to July 15, 1959. A notice was mailed to plaintiff on October 24, 1960, at his last known address at 1609 South Sawyer Avenue, Chicago, to notify him that a hearing would be held on November 14, 1960, concerning the alleged overpayment. Plaintiff failed to appear at the hearing. On December 28, 1960, a further notice was sent to him at the same last known address, that the claims deputy had determined plaintiff had knowingly failed to disclose his employment and wages for the purpose of obtaining benefits for which he was not eligible; and further, that he was ineligible for benefits from that date, under section 901 of the Act, until he repaid the amount of $104.50 and also a penalty of $104.50. No reply was received from plaintiff.

On December 12, 1970, plaintiff again applied for unemployment compensation. On January 12, 1971, while making a required periodic visit to his local unemployment office he was told that there was a "fraud stop order" on his benefit check and that he could not receive any benefits until it was removed. Upon inquiring, he was further told that he would be ineligible until he repaid the $104.50 overpayment and the penalty of an equal amount. At this time plaintiff requested that the $104.50 overpayment be recouped from accrued benefits then payable to him, but he was informed that section 901 made no provision for recoupment of benefits fraudulently obtained.

On January 20, 1971, a hearing was held before a claims deputy of the Unemployment Compensation Division, in which plaintiff did not deny being employed nor receiving wages for the 1959 period in question. He stated that he was not employed full time at the Evanston Hotel and that he believed he did not have to report wages from "part time" work. He also stated that he had moved from the last known address

prior to the dates on which the notices had been sent, without leaving a forwarding address with the Post Office and did not receive the notice of hearing or the December 28, 1960, notice of ineligibility. Plaintiff further testified that he did not have occasion to reapply for benefits until December 1970, and only after January 12, 1971, did he become aware of the prior determination of ineligibility. No correspondence was returned, according to the agency records. On February 2, 1971, the deputy issued another determination which held that plaintiff had knowingly failed to report the 1959 employment and earnings for which he was ineligible, and that he was ineligible for benefits from December 28, 1960, and thereafter until he repaid $104.50 and in addition, paid a penalty of $104.50.

Plaintiff appealed the deputy's determination, and on March 25, 1971, a hearing was held by a referee of the Division in which plaintiff contended that he should not be held continuously ineligible from December 28, 1960, because he had not previously received notice of the overpayment, and that the statute of limitations had run against the penalty imposed. The referee issued a decision on April 6, 1971, affirming the determination of the deputy. The plaintiff appealed to the Board of Review.

On September 23, 1971, the Board of Review rendered a decision which held, *inter alia*, that the initial determination made on December 28, 1960, was final that under section 901 of the Act plaintiff was no longer subject to the additional penalty since more than 3 years had elapsed from the date of ineligibility; and that the decision of the referee is modified to hold that plaintiff is not subject to the penalty but is subject to the repayment of the overpayment, either by restitution or recoupment from benefits otherwise payable to him. On October 6, 1971, plaintiff received a letter from the Unemployment Compensation Division advising that the overpayment of benefits could not be recouped and had to be repaid in full before any benefits could be released to him. A subsequent request by plaintiff for reconsideration and clarification of the decision was declined by the Board of Review.

On October 27, 1971, plaintiff requested and was given leave to file as a poor person his complaint for administrative review in the circuit court, seeking a reversal and remandment of the decision of the defendant Board of Review. The trial court rejected plaintiff's contentions as raised in the instant appeal and affirmed the decision rendered by the Board of Review. The instant appeal therefrom resulted.

The pertinent provisions of the Unemployment Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 300 *et seq.*) are as follows:

"490. § 900. *Recoupment.*) A. Whenever an individual has re-

ceived any sum as benefits for which he is found to have been ineligible, the amount thereof may be recovered by suit in the name of the People of the State of Illinois, or, from benefits payable to him, may be recouped:

1. At any time, if, to receive such sum, he knowingly made a false statement or knowingly failed to disclose a material fact.

2. Within one year from the date he has been found to have been ineligible for any other reason, pursuant to a reconsidered finding or a reconsidered determination.

B. Whenever the deputy referred to in Section 702 decides that any sum received by a claimant as benefits shall be recouped, he shall promptly notify the claimant of his decision and the reasons therefor. The decision and the notice thereof shall state the amount to be recouped, the weeks with respect to which such sum was received by the claimant, and the time within which it may be recouped. The deputy may reconsider his decision within one year after the date when the decision was made. Such decision or reconsidered decision may be appealed to a Referee within the time limits prescribed by Section 800 for appeal from a determination. Any such appeal, and any appeal from the Referee's decision thereon, shall be governed by the applicable provisions of Sections 801, 803, 804 and 805.

C. Any sums recovered under the provisions of this Section shall be treated as repayments to the Director of sums improperly obtained by the claimant.

\* \* \*

(Ill. Rev. Stat. 1969, ch. 48, par. 490.)

491. § 901. *Fraud—Penalties.*) An individual who, for the purpose of obtaining benefits, knowingly makes a false statement or knowingly fails to disclose a material fact, and thereby obtains any sum as benefits for which he is not eligible, shall be ineligible for benefits from the date on which he is notified to repay such sum, until he has repaid it and until whichever of the following shall first occur:

(1) He has paid a penalty equal to the sum he so obtained, or equal to his weekly benefit amount current on the date when he obtained such sum, whichever is the greater; or the amount of such penalty has been recouped from benefits for which he would have been eligible in the absence of this Section; or

(2) Three years have elapsed since the date his ineligibility began pursuant to this Section."

Ill. Rev. Stat. 1969, ch. 48, par. 491.

We find persuasive plaintiff's argument that the trial court erred in holding that defendants' interpretation of sections 900 and 901 does not deprive plaintiff of equal protection of the law. Therefore, our consideration will be limited to that particular contention upon appeal.

■■ Initially, defendants argue that plaintiff is precluded from attacking the defendants' interpretation of the Act on the ground that it deprives an indigent person of equal protection in that the record does not support plaintiff's claim that he was at all relevant times indigent and unable to pay the $104.50. It is true that generally, one seeking to attack a statute as unconstitutional must bring himself within the class to whom the law is alleged to be constitutionally invalid. (*People v. Zuniga* (1964), 31 Ill.2d 429, 202 N.E.2d 31.) In the instant case, however, we feel that there is evidence of the plaintiff's standing to raise this constitutional issue. Plaintiff testified at the referee's hearing on March 25, 1971, that he had not been employed in any capacity since applying for benefits on December 12, 1970. He also testified that at the time of that hearing he did not have even enough money for carfare. Moreover, the record discloses that plaintiff's application for leave to file his complaint for administrative review as a poor person was approved by the circuit court. (Ill. Rev. Stat. 1969, ch. 33, par. 5.) Although the record does not contain an exhaustive inquiry on the question at the various hearings held herein, we hold that there is sufficient evidence of record to show that plaintiff is a member of that class of persons to whom it is asserted that these statutes, as interpreted by the defendants, are constitutionally invalid.

Defendants' interpretation is that sections 900 and 901 bar recoupment of fraudulently obtained benefits both by express language and by interaction between the two related sections. Defendants interpret the words "or, from benefits payable to him, may be recouped" contained in subparagraph A of section 901, providing for the recovery of benefits improperly received, as applying only to recoupment against benefits already accrued and payable to a claimant at the time fraud is discovered. Further, defendants maintain that by the use of the word "repaid" in section 901 concerning the recovery of fraudulently obtained benefits, the legislature expressly excluded recoupment as a method by which such benefits could be returned. Under defendants' interpretation of section 901, an individual who has fraudently obtained benefits is ineligible for further benefits from the date he is notified to repay such sums until he has "repaid" them and also satisfied any penalty imposed; thus, the instant plaintiff has never accrued any benefits which could be recouped under section 900.

Plaintiff argues that defendants' interpretation of sections 900 and 901 requiring fraudulently obtained benefits to be repaid as opposed to recouped, operates to treat indigents who have fraudulently obtained benefits differently from non-indigents who have received benefits by the same means. It is therefore contended that the repayment requirement discriminates against indigents in that only because of a lack of funds they are deprived of a realistic opportunity of re-establishing eligibility as a non-indigent may by repaying the amount improperly received. Defendants respond that the requirement of repayment of fraudulently obtained benefits, as opposed to recoupment, does not treat indigents and non-indigents differently, but requires all wrongdoers who were unjustly enriched to return monies not rightfully in their possession and pay or recoup a penalty. Defendants further assert that to allow fraudulently obtained benefits to be recouped would not only encourage fraud but in effect would subsidize it.

■■ In recent years the United States Supreme Court has had occasion to consider the validity of various statutory classifications. Under the provision of the equal protection clause of the fourteenth amendment those statutory classifications which are considered invidious or which infringe upon a fundamental right will be upheld only if the exclusions inherent in such classification are necessary to promote a compelling state interest. (*Dunn v. Blumstein* (1972), 405 U.S. 330.) Classifications predicated upon the basis of wealth have consistently been held to be invidious and thereby place upon the state the heavy burden of demonstrating their justification. *Tate v. Short* (1971), 401 U.S. 395; *Williams v. Illinois* (1970), 399 U.S. 235; *Harper v. Virginia State Board of Elections* (1966), 383 U.S. 663; *Griffin v. Illinois* (1956), 351 U.S. 12.

■■ The interpretation given sections 900 and 901 by the defendants and which was passed upon approvingly by the trial court does give rise to an invidious classification predicated upon wealth. Under that interpretation, all individuals who fraudulently obtain benefits are not treated equally. A wrong-doer's access to monies from which repayment might be made, and as a consequence eligibility re-established, becomes in practical effect the criterion on whether a particular wrongdoer can receive future benefits. Although these statutes as interpreted by the defendants are seemingly directed at all wrongdoers alike, a law non-discriminatory on its face may be grossly discriminatory in its practical operation. (*Williams v. Illinois, supra; Griffin v. Illinois, supra.*) As an invidious classification is thus presented the burden is upon the defendants to show the compelling justification for the practical distinctions which result from their interpretation of sections 900 and 901.

■■ Defendants argue that the State has a legitimate interest in refusing to allow the recoupment of fraudulently obtained benefits because to allow it would both encourage and subsidize frauds being perpetrated by ineligible claimants. We fail to see how the allowance of recoupment in situations similar to that presented in the instant case will either encourage or subsidize fraud. An ineligible recipient fraudulently obtaining benefits will realize no gain if recoupment of the overpayment is allowed as opposed to direct repayment. In those cases where recoupment is had, a set-off would result against the claimant's future accruing benefits and until the amount of the overpayment is fully recaptured, the claimant would realize nothing out of the accrued benefits which he would otherwise have received. For the same reason, recoupment does not subsidize fraud; by recouping from future accruing benefits otherwise payable to the claimant, a set-off cancels out the monetary gain of the original benefits improperly received.

In their briefs filed in this court defendants have urged that if recoupment of fraudulently obtained benefits were to be allowed it would have the effect of reducing the amount of funds available for disbursement to those presently in need of unemployment compensation. During oral argument defendants further stated that the allowance of recoupment as a method of recapturing fraudulently obtained benefits would result in an increase of the financial burden of administering the Unemployment Compensation Act. We accept neither assertion.

The actual benefit funds which are distributed under the Illinois Unemployment Compensation Act are generated from contributions of employers within the State of Illinois (Ill. Rev. Stat. 1969, ch. 48, par. 570). The contributions are immediately paid over to the Secretary of the Treasury to the credit of the Unemployment Trust Fund established under the Social Security Act (26 USC § 3304(a)(3)). Moreover, all costs incurred in the administration of a certified unemployment compensation program such as that currently in operation in Illinois are paid by the federal government under provisions of the Social Security Act (42 USC § 501 *et seq.*). Neither in the acquisition of the benefit funds nor in the cost of administering those funds is there a potential for the depletion of State monies by the allowance of recoupment of fraudulently obtained benefits.

■ We feel that a compelling justification has not been established for the distinctions in treatment which arise from the defendants' interpretation of sections 900 and 901. The plaintiff would lose substantial benefits—not because of greater culpability but because of indigency, a consequence which should not depend on an irrelevant factor of poverty, especially where the State has an alternative method of recovery of the

overpayment. Therefore, we hold that the interpretation of these statutes approved by the trial court constitutes a denial of the equal protection guarantees of article I, section 2, of the Illinois Constitution and of the fourteenth amendment of the United States Constitution.

■■ It is our duty as a court of review to construe acts of the General Assembly in such a way as to promote their essential purposes and to avoid, if possible, a construction which would render an act constitutionally invalid. (*Stubblefield v. City of Chicago* (1971), 48 Ill.2d 267, 269 N.E.2d 504; *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Commission* (1969), 42 Ill.2d 385, 251 N.E.2d 253; *Quinn v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1972), 7 Ill.App.3d 791, 289 N.E.2d 117.) As a consequence, the rule of construction has arisen that where a statute is susceptible of two differing constructions—one which will render it constitutional and the other which will not—the former construction will be adopted if it can reasonably be done. *Country Mutual Insurance Co. v. Knight* (1968), 40 Ill.2d 423, 240 N.E.2d 612; *Progressive Party v. Flynn* (1948), 400 Ill. 102, 79 N.E.2d 516; *Illinois Bell Telephone Co. v. Ames* (1936), 364 Ill. 362, 4 N.E.2d 494.

■ In the instant case, the manifest legislative purpose in the enactment of sections 900 and 901 was to provide both a means by which fraudulently or otherwise improperly obtained benefits might be recovered, and a means by which individuals who have resorted to fraud to obtain benefits might be penalized. The legislative purpose behind each respective statute will not be hampered by the allowance of recoupment as a method by which fraudulently obtained benefits may be recovered. We therefore construe the words "or, from benefits payable to him, may be recouped" contained in section 900 to apply both to presently accrued benefits and to benefits which would otherwise have accrued in the future except for the ineligibility created under section 901. We further construe the word "repaid" contained in section 901 to mean either direct cash repayment by a claimant or recoupment from benefits for which the claimant would otherwise have been eligible except for the ineligibility created under that statute.

The plaintiff's qualification for benefits from the date of his application on December 12, 1970, in the absence of ineligibility under section 901 of the Unemployment Compensation Act has never been determined by the defendants. It is therefore necessary to remand this cause for an administrative hearing to determine such eligibility for benefits and to provide recoupment from benefits otherwise accruing as of the date of said application.

For the foregoing reasons, the judgment of the circuit court of Cook

County is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

McNAMARA, P. J., and DEMPSEY, J., concur.