Vito DIPRIZIO, Plaintiff,

v.

INDUSTRIAL COMMISSION OF the State of Utah, BOARD OF REVIEW, Defendant.

No. 14698.

Supreme Court of Utah.

Nov. 11, 1977.

John D. Russell, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Floyd E. Astin, Special Asst. Atty. Gen., Salt Lake City, for defendant.

ELLETT, Chief Justice:

Plaintiff Vito Diprizio, seeks reversal of a decision of the Industrial Commission,[1] which denied his application for further unemployment benefits and required him to repay $1,217 which it found he had been paid without being entitled thereto, in that the Commission found that the plaintiff had knowingly withheld "material facts of his work and earnings to receive benefits to which he was not entitled," in violation of 35–4–5(e), U.C.A.1953. He argues: (1) that the evidence does not justify a finding that he "knowingly" violated the statute; and (2) that the imposition of such a harsh and arbitrary remedy is contrary to and defea-

[1] That the decision of the Board of Review is deemed to be the decision of the Commission, see Sec. 35–4–10(a), U.C.A.1953.

tive of the purpose of the Unemployment Compensation Act.

The plaintiff initially applied for unemployment benefits for the week of December 21, 1974. At that time, and on two other occasions, he accurately reported his earnings in submitting his claims for weekly benefits. However, he filed a claim asserting that he received no earnings for the week ending May 31, 1975, whereas he in fact received wages of $55 on May 30 for that week.

Upon the basis of the plaintiff's false claim for the week ending May 31, as just recited, the Commission entered the order he complains of that he was ineligible to receive benefits for the ensuing 51 weeks and could receive no further benefits until he has repaid the $1,217 he received subsequent to that violation. The statute upon which the Commission based its decision is Sec. 35-4-5, U.C.A.1953:

An individual shall be ineligible for benefits  .   .   .

       *    *    *    *    *    *

(e) For the week with respect to which he had willfully made a false statement or representation or knowingly failed to report a material fact to obtain any benefit under the provisions of this act, and for the 51-week period immediately following and until he has repaid to the fund all moneys he received by reason of his fraud and which he received during such following 51-week disqualification period,  .   .   .   .

■ As a justification for his conduct the defendant argues that due to the fact that he is an Italian immigrant he has great difficulty with the English language; and that this resulted in his error in filing the false claim, wherefore, he asserts that it was a mistaken, rather than a wilful and knowing, filing of the false claim. However, from the transcript of his testimony it

is apparent that he understood and responded to questions; that he knew in applying for and receiving unemployment compensation he was obliged to report his earnings when filing such claims. The hearing examiner (whose findings the Board of Review and the Commission adopted) was not obliged to believe in his explanation, and the standard rule of review is that such findings will not be overturned if there is a reasonable basis in the evidence to support them.[2] We are not persuaded that the finding in this case should be overturned.

■ Neither are we persuaded by the plaintiff's further argument that because the order made is so severe and arbitrary that it runs contrary to and defeats the purpose of the Unemployment Compensation Act that it should be unconditionally reversed and no further consideration be given it. It is true of course that the general purpose of that act is to alleviate the burdens that result on individuals and upon the economy generally because of the hardships of unemployment  But it is equally true that the act and the funding which supports it must be protected against unjustified claims of persons who would prefer unemployment benefits to employment,[3] and who engage in various artifices including falsification and fraud to obtain benefits. In order to carry out the salutary purposes of the act, it is necessary not only that there is a means of obtaining reimbursement but also of penalizing those who would so offend.[4]

Neither the Commission nor this Court can change a statute that is as clear and unambiguous as is the one cited above. In fact, this Court has already passed upon this point by a unanimous decision wherein we said:

Plaintiff also complains that the deprivation of 52 weeks of benefits is a severe penalty. With this we are inclined to

2.  *Kennecott Copper Corp. v. Dept. of Employment Security*, 13 Utah 2d 262, 372 P.2d 987 (1962).

3.  *Soricelli v. Board of Review*, 46 N.J.Super. 299, 134 A.2d 723 (1957).

4.  *Meadows v. Grabiec*, 20 Ill.App.3d 407, 314 N.E.2d 283 (1974).

agree. However, under the statute it does not appear that the fact finder or this court has the discretion to reduce or to forgive any part of the penalty. . . [5]

If a discretion is to be given to the Commission to ignore or modify an unambiguous statute, then that should be done by the legislature and not by this Court.

The ruling by the Commission is affirmed. No costs are awarded.

WILKINS and HALL, JJ., concur.

CROCKETT, Justice (dissenting):

The Commission appears to have acted under the impression that the quoted statute makes it mandatory to impose the full penalty of disqualification for 51 weeks for any violation of the statute and that the worker cannot thereafter receive unemployment compensation until full restitution has been made; and that the Commission can exercise no discretion and has no alternative than to follow that mandate.

I acknowledge that the doctrine of stare decisis is important for the solidarity of the law and those relying thereon. Nevertheless, where there is judge-made law, which is not a rule of property on which rights are acquired, maintained or relied on, and which is found to be in error, that should not be a cause for compelling the perpetuation of error.[1] And this is especially true where no rights of any kind have been acquired and none will be seriously adversely affected by rectifying the error. In my opinion this applies to the *Decker* case [2] and it should be overruled.

A general rule of construction of statutes is that they should be so interpreted and applied as to harmonize with the purposes of the act of which they are a part. I do not see how that objective is accomplished by applying the section under scrutiny in an absolute and arbitrary manner. For example, if the statute is so applied, a worker who fails to report ever so small an amount, say $10, is penalized the same as one who fails to report $100 or $1,000. Further, no distinction is made, whether violation has been single and small or large, numerous and continuous. Under that arbitrary view, the maximum penalty is mandated regardless of the amount, or the number of violations, or of the actual loss sustained by the State Unemployment Compensation Fund.

It is also readily seen that in some instances the imposition of a 51-week disqualification from receiving benefits and continued disqualification until the amount received (in this instance $1,217) has been repaid would work a great hardship upon a worker and his family; and such a policy generally applied would have the very same negative effects upon the economy that the Act was designed to guard against. It is therefore obvious that in some circumstances the arbitrary and unreasonable imposition of the maximum penalties has not only the potential for harshness and injustice, but it can defeat rather than carry out the purposes of the act.[3]

Correlated to what has been said above about the desirability and propriety of so construing a statute as to give effect to its intent and purpose, there is the further rule relating to construction of statutes which confer powers on a governmental entity: that they give not only the authority expressly granted, but that which is implied as reasonably necessary to carry out the duties and responsibilities imposed upon such entities.[4]

**5.** *Decker v. Industrial Comm.*, Utah, 533 P.2d 898 (1975).

**1.** See *Salt Lake City v. Ind. Comm.*, 93 Utah 510, 74 P.2d 657.

**2.** Main opinion, footnote 5; and see also *Wycoff v. Public Service Comm.*, 13 Utah 2d 123, 369 P.2d 283 (1962).

**3.** See Sec. 35–4–2, U.C.A.1953.

**4.** *Utah Copper Co. v. Industrial Commission*, 57 Utah 118, 193 P. 24 (1920); See also *Warren v. Marion County*, 222 Or. 307, 353 P.2d 257 (1960) and *Wimberley v. New Mexico State Police Board*, 83 N.M. 757, 497 P.2d 968 (1972), stating that the authority of administrative agencies includes those implied powers necessary to exercise those powers expressly granted by statute.

It is an elemental concept of law that some exercise of discretion, when imposing statutory penalties, is necessary to achieve individualized justice.[5] This is especially true when sanctions and penalties are applied by administrative agencies, when the power is conferred upon such agencies to investigate facts, weigh evidence and draw conclusions as a basis for legal actions. Due to the nature of the responsibilities imposed upon the Commission in administering and carrying out the purposes of the act, it is required to perform some functions of a judicial nature.[6] Being thus invested with judicial powers, there should be necessarily implied therein the authority to exercise the judicial prerogative of acting in a reasonable and judicious manner[7] in order to properly administer the act and accomplish its purposes.

Accordingly, it should not be considered as invariable and mandatory that the maximum penalties prescribed by the statute be imposed. But in exigent circumstances, where the imposition of such maximum penalties would result in an arbitrary and unreasonable injustice, as well as tending to defeat rather than carry out the purposes of the Act, the Commission should have the power to modify or suspend the imposition of such penalties, or the time and manner of reimbursement required, as the purposes of the Act and the interests of justice may require.

It is my opinion that the order made should be vacated and this case remanded to the Industrial Commission for further consideration and/or proceedings consistent with the views expressed herein.

MAUGHAN, J., concurs in the dissenting opinion of CROCKETT, J.

**5.** Davis, Administrative Law Treatise, 1970 Supp., Sec. 4.14, p. 211.

**6.** *Thompson v. Amis*, 208 Kan. 658, 493 P.2d 1259, 1263 (1972); see statement in *Baird, etc. v. State of Utah, etc.*, # 14984, October ——, 1977.

**7.** Analogous to the present situation is the discretionary power of a court to suspend the

sentence of one convicted of a crime. At common law, this was recognized as one of the inherent powers of a court, *Williams v. Harris*, 106 Utah 387, 149 P.2d 640 (1944) and authorities cited therein. Presently, Sec. 77–35–17, U.C.A.1953 permits a court to suspend the imposition or execution of a sentence "if it appears compatible with the public interest."