William H. CHRISTENSEN, Plaintiff,

v.

The BOARD OF REVIEW OF the INDUSTRIAL COMMISSION of Utah, Defendant.

No. 15115.

Supreme Court of Utah.

May 4, 1978.

Bruce Plenk of Utah Legal Services, Inc., Ogden, for plaintiff.

Robert B. Hansen, Atty. Gen., Floyd G. Astin, Sp. Asst. Atty. Gen., Salt Lake City, for defendant.

HALL, Justice:

Review of a decision of the Board of Review of the Industrial Commission, sus-

taining the order of an Appeals Referee, of a 52-week disqualification period for entitlement to unemployment compensation, under the provisions of Title 35-4-5(e), U.C.A.1953, in this case particularly having to do with failure to report "away from home" travel to comply with eligibility provisions for compensation.

In order to perpetuate rights to compensation, while unemployed and entitled thereto, one must file a weekly report about any employment in which he may have been engaged, what he received, etc., including a report requiring a "yes" or "no" answer to the following:

I traveled away from home. (If "yes," show the date and time left, destination, date and time returned and purpose of trip. If looking for work, list employers you contacted.) [Yes] [No].

This was a requirement adjunct to another required written commitment to the effect that a claimant, to obtain benefits, must state that during the week for which weekly reports are required "I was able, available, and willing to accept full-time work."

Christensen was 1) "away from home" during the week in question, and 2) he was not "able, available and willing to accept full-time work," because on Tuesday, September 28, 1976, he drove to Price, Utah, 120 miles away, to go elk hunting. Between the 28th and Thursday, the 30th, he had sprained his ankle, was treated at the Price Hospital, returning to Salt Lake City on Friday, October 1, 1976. Thereafter he certified in writing that during the week ending October 2, 1976, he was "able, available and willing to accept full-time work" and that he had not "traveled away from home,"—as he understood the terms. His only explanation was that he thought "away from home" meant "outside of Utah,"—which seems to discredit his claim that he had not received a handbook that stated just such condition,—which apparently added up, in the mind of the Appeals Referee, the Board of Review and the Industrial Commission only a convenient "Yes, I read it, but yes, I didn't read it"

gratuity, that likewise does not appeal to this Court, which affirms the decision as modified, with no costs on appeal assessed.

ELLETT, C. J., concurs.

CROCKETT, Justice (concurring in result):

I concur in the result. But in doing so add some comments.

There is a reasonable basis in the evidence to support the Commission's finding that the plaintiff was *not* available for work, during a week in which he applied for and accepted compensation, under a representation that he *was* available for work. According to the standard rules of review, that finding is not subject to reversal by this Court. There is therefore no doubt that the $88 should be refunded.

Concerning the disqualification for 52 weeks, I view the matter somewhat differently. I conceive it to be my duty to recognize that the decisional law of our state is as stated by the majority in our recent case of *Diprizio v. Industrial Commission*, Utah, 572 P.2d 679. Because no majority of this Court is willing to accept what I believe to be the correct view of the law as expressed in the dissent therein, adherence to the law as expressed by the majority impels me to agree that the decision of the Commission conformed thereto in applying the statute.

Nevertheless, I take occasion to point out that this case, wherein because of a four-day diversion from the monotonies of life on an elk hunt, the Commission was under compulsion to apply the 52-week disqualification, is a good example of the unreasonableness and injustice that can result from the holding that the statute is absolute and mandatory. I refer to and reaffirm my views expressed in the *Diprizio* case, supra: that in those aspects of its statutory responsibilities wherein the Commission is authorized and required to exercise judicial powers, that should necessarily include the judicial prerogative of exercising reason and good conscience in imposing its judgments, to the end that it could adequately discharge its duties and administer justice.

It should also be observed that while a legislative change in this particular statute might provide a means for correcting the evil in its unreasoning and mandatory application, that would not provide what I believe to be a sound and necessary foundation for administrative tribunals generally: the authority to exercise judicial discretion in performing responsibilities which are judicial in nature.

MAUGHAN, Justice (dissenting):

For the following reasons, I dissent. All statutory references are to U.C.A. 1953.

The statutory penalty of a 51-week period of disqualification, for unemployment compensation benefits was invoked against claimant because of fraud. This forfeiture is predicated on claimant's responses to a questionnaire sent weekly to claimants.

The Board of Review affirmed the determination of the appeals referee on the ground the claimant knowingly withheld material information to obtain benefits which he was not entitled to receive.

The undisputed facts are that claimant went to Price, Utah, on September 28, 1976, and returned to his home in Salt Lake City on October 1, 1976. Claimant went with his friends to go elk hunting, and he failed to report this activity on his claim card. He asserted he didn't know it was necessary to report this excursion.

While hiking, claimant sprained his ankle on September 30, 1976; he received treatment at the Price Hospital. He admitted his mobility was impaired, and he probably could not have worked until October 6, 1976. Claimant could not recall receiving a claim's handbook, and no finding to the contrary was made.

On his weekly claim card, claimant certified he was able, available, and willing to accept full time work. Claimant further responded in the negative to the following question:

10. I traveled away from home. (If "yes" show the date and time left, destination, date and time returned and purpose of trip. If looking for work, list employers you contacted.)

Claimant testified at the hearing his understanding of question 10 was that only out of state travel need be reported.

The referee found:

In regard to the claimant's failure to report travel away from home on his claim for the week ended October 2, 1976, it must also be held that the claimant's actions in this regard were committed knowingly. His statement that he considered he had not traveled away from home because he had not left the State of Utah cannot be considered a valid reason. The same reasoning might also be extended to include one's country, with the conclusion that if an individual did not travel outside the United States his travel need not be reported since he had not traveled away from home. The Referee rejects such reasoning and holds that the claimant violated the provisions of Section 35–4–5(e) . . . .

The referee ruled claimant did knowingly withhold the material facts of his illness, travel and injury to receive benefits to which he was not entitled.

The findings of the referee are insufficient as a matter of law to sustain a finding of fraud under Section 35–4–5(e), U.C.A. 1953.

Clearly, there emerges a legislative intent to confine the 51-week disqualification penalty to those circumstances where the traditional elements of fraud have been established.

35–4–5(e) provides:

For the week with respect to which he had willfully made a false statement or representation or knowingly failed to report a material fact to obtain any benefit under the provisions of this act, and for the 51-week period immediately following and until he has repaid to the fund all moneys he received *by reason of his fraud* and which he received during such following disqualification period, . . . [Emphasis supplied.]

Subsections (d) and (e) of Section 35–4–6 further indicate a legislative design to es-

tablish three distinct categories for persons who have received benefits to which they are not entitled, viz., by reason of fraud, by reason of fault, and without fault. Those who have received benefits by reason of fraud or by reason of fault are liable to repay such sums. However, under Section 35-4-5(e), the statutory penalty of a 51-week disqualification period is confined to those who have received benefits by reason of fraud.

The nine basic elements of actual fraud are:

(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his rights to rely thereon; (9) his consequent and proximate injury.[1]

Thus, to constitute fraud there must be scienter. Scienter is knowledge on the part of a person making representations, at the time they are made, that they are false.
. . . The false statement must have been made intentionally to deceive or with what is recognized as the legal equivalent to a deliberately fraudulent intent to deceive; [Citation]. Proof of a mere naked falsehood or misrepresentation is not enough, even though the complaining party relied thereon. The rule is firmly established the existence of a fraudulent intent or an intent to deceive is an indispensable element. . . .[2]

The referee did not make any finding regarding an intent to deceive. There is a certain circuity of reasoning in the findings, viz., claimant knew he was elk hunting and obviously not available to accept employment; therefore, claimant's actions were committed knowingly. Such a finding does not resolve the issue of claimant's "guilty knowledge" of the falsity of his representation, his intent to deceive—an indispensable element of fraud.

The reference of the referee to claimant's understanding of question 10, on the weekly card, and the conclusion that it was not a valid reason; further negates a finding of an intent to deceive. The referee merely engaged in hyperbole in his comment that if claimant's explanation were accepted one could claim the entire United States as his home from whence he had not traveled. In addition, question 10 is not a model of clarity. The key elements of "travel," "trip," "destination," and "home" could reasonably be interpreted not to encompass an excursion to an area a few hours distant from one's home.

Claimant had been denied benefits when he had taken a vacation in California for two weeks the previous July. The contrast between the two absences could have been the basis of his misunderstanding that travel from home meant a trip to another state.

. . . Furthermore, an alleged representation must be regarded in the light of the conversation, and may not be lifted out of its context nor considered apart from the circumstances or situation under which it was made. Nor can an alleged representation be given a meaning which cannot reasonably be attributed to it. [Citation][3]

Claimant's explanation should have been evaluated within the context of question 10, his knowledge of the falsity of his response, and his intent to deceive. Without such a finding the determination of fraud cannot be sustained.

Even under the main opinion of this Court in *Diprizio v. Industrial Commission* claimant here could not be denied benefits pursuant to 35-4-5(e), because fraud was not proved. The Commission is limited to remedies existing in 35-4-6(d) and (e).

1. *Oberg v. Sanders*, 111 Utah 507, 515, 184 P.2d 229, 234 (1947).

2. *Cohen v. Metropolitan Life Insurance Co.*, Mo.App., 444 S.W.2d 498, 505 (1969).

3. *Oberg v. Sanders*, note 1 supra, at p. 515 of 111 Utah, at p. 234 of 184 P.2d.

This matter illuminates the unnecessary harshness compelled by this Court's holding in *Diprizio* supra, a harshness which defeats the social purpose of the legislation. Consequently, I reaffirm the dissenting opinion, of Mr. Justice Crockett, to *Diprizio*; and assign it as an additional reason for this dissent.

WILKINS, Justice, concurs in the result of MAUGHAN's J., dissenting opinion.