2010 UT App 382

Kristy SMITH, Petitioner,

v.

DEPARTMENT OF WORKFORCE SER-
VICES, WORKFORCE APPEALS
BOARD, Respondent.

No. 20100014–CA.

Court of Appeals of Utah.

Dec. 23, 2010.

Kristy Smith, Salt Lake City, Petitioner Pro Se.

Geoffrey T. Landward, Salt Lake City, for Respondent.

Before Judges McHUGH, ORME, and VOROS.

## OPINION

VOROS, Judge:

¶ 1 Petitioner Kristy Smith challenges a decision of the Workforce Appeals Board (the Board) assessing repayment and a statutory penalty against her for unlawfully obtaining unemployment benefits. We affirm.

## BACKGROUND

¶ 2 Smith was separated from JetBlue Airways on December 31, 2008, as part of a reduction in force. At that time, JetBlue gave Smith a lump sum payment of $18,960.74 for her years of service and for unused vacation pay. On January 3, 2009, Smith opened a claim for unemployment benefits by telephone. An automated system asked if she had received or was entitled to receive any vacation or severance pay from her previous employer. Smith answered "no." Consequently, the Department of Workforce Services (the Department) awarded her an incorrect amount of benefits.

¶ 3 When Smith filed her claim for the week ending February 7, 2009, she acknowledged receiving the Department Claimant Guide (the Guide), which explains the procedures for claiming unemployment benefits. The Guide explains that all vacation, holiday, severance, or separation pay must be reported. After a cross-check disclosed the $18,960.74 payment, the Department contacted Smith. She acknowledged that she had received and reviewed the Guide. She also agreed that she was paid the $18,960.74 as reported by the employer. However, Smith stated that she thought the payment was a bonus and not reportable as earnings. Based on these facts, the Department determined an overpayment of $8,887 and also assessed a civil penalty in an equal amount based on a finding of fraud.

¶ 4 Smith appealed the Department's decision to an Administrative Law Judge (the ALJ), who conducted a hearing by telephone. At the beginning of the hearing, the ALJ asked Smith whether she had any witnesses participating in the hearing, to which Smith answered, "I have my husband as a representative." Smith did add, however, that her husband was "not really providing testimo-

ny" but was just there as "[r]epresentation." The ALJ mistakenly treated Smith's husband as a witness, requiring him to leave the room and shut the door behind him. Toward the end of the hearing, the ALJ asked Smith if her husband would provide any additional testimony. Smith replied, "You know nothing really. I mean he could testify that I don't look at the finances ... he runs all of that...." Smith's husband did not testify. The ALJ affirmed the Department's decision.

¶ 5 Smith appealed the ALJ's ruling to the Board, challenging the ALJ's finding of fraud and contending that the ALJ had erred in excluding her husband from the hearing. The Board upheld the finding of fraud. It also ruled that while the ALJ committed "a procedural error" by excluding Smith's husband from the hearing, there was not "any harm significant enough to require remand" to the ALJ because Smith "was able to articulate her testimony and evidence to the [ALJ], and on appeal [w]as ... able to reiterate those same arguments." Accordingly, the Board affirmed the findings and determination of the ALJ, including the repayment and civil penalty. Smith appeals that decision.

### ISSUES AND STANDARDS OF REVIEW

¶ 6 Smith first contends that the Board lacked sufficient evidence to support a finding of fraud. An administrative agency's findings of fact will be reversed "only if the findings are not supported by substantial evidence." *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997). Substantial evidence is "more than a mere scintilla of evidence ... though something less than the weight of the evidence." *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384 (omission in original) (internal quotation marks omitted). In addition, the agency's application of law to its factual findings will not be disturbed "unless its determination exceeds the bounds of reasonableness

and rationality." *Johnson v. Department of Emp't Sec.*, 782 P.2d 965, 968 (Utah Ct.App. 1989).

¶ 7 Second, Smith challenges the exclusion of her representative from the Department hearing. Smith is entitled to relief if, on the basis of the agency's record, she was substantially prejudiced by the agency's wrongful action. *See* Utah Code Ann. § 63G–4–403(4) (2008).[1]

### ANALYSIS

#### I. Sufficiency of the Evidence

¶ 8 First, Smith claims that there is insufficient evidence to support a finding of fraud. A claimant who knowingly fails to report a material fact on a weekly unemployment claim is not eligible for benefits. Utah Code Ann. § 35A–4–405(5)(a) (Supp.2010). Upon a finding of fraud, the claimant must repay amounts received together with a civil penalty equal to the amounts received. *See id.* § 35A–4–405(5)(a), (c). Neither the Board nor this court has the authority to alter the statutory penalty. *See* Utah Admin. Code R994–406–403; *Diprizio v. Industrial Comm'n*, 572 P.2d 679, 680–81 (Utah 1977).

¶ 9 Under the rules governing the Department, fraud is "a willful misrepresentation or concealment of information for the purpose of obtaining unemployment benefits." Utah Admin. Code R994–406–401(2). To establish fraud, the Department must show materiality, knowledge, and willfulness. *See id.* R994–406–401(1). Materiality is established when a claimant makes false statements or fails to provide accurate information for the purpose of obtaining any benefit to which the claimant is not entitled. *See id.* R994–406–401(1)(a)(i)(A). Knowledge is established when a claimant knew or should have known that the information submitted to the Department was incorrect or if the claimant failed to provide required information. *See id.* R994–406–401(1)(b). Finally, willfulness

---

1. Smith also asserts, without analysis or citation to authority, that the Board's action violated her rights under article I, section 7 of the Utah Constitution. *See* Utah Const. art. 1, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."). Our courts

"will not engage in constructing arguments out of whole cloth," even in capital cases. *State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988). Accordingly, we do not address Smith's state constitutional claim.

is established when a claimant files claims containing false statements or deliberate omissions. *See id.* R994–406–401(1)(c). An admission or direct proof of intent to defraud is not required. *See id.* R994–406–401(3).

¶ 10 Upon termination from JetBlue Airways on December 31, 2008, Smith was aware that she would receive a lump sum separation payment. The total amount, including some paid vacation, was $18,960.74. Nonetheless, when Smith opened an unemployment claim on January 3, 2009, she answered "no" to a question asking whether she had received or was entitled to receive any vacation or severance pay.

¶ 11 Smith contends that the evidence before the Board was insufficient to support a finding that she knew this statement was false. She asserts that she was unaware that her separation payment should have been included in her unemployment claim, as she was "never aware of the details of [her] pay or benefits." At the hearing, Smith testified that the payment was deposited electronically, that her husband was in charge of finances, and that she thought that her separation payment was a bonus for years of loyalty and not vacation or severance pay. However, Smith also acknowledged that she received and reviewed the Guide. "A claimant has an obligation to read materials provided by the Department and to ask a Department representative if he or she has a question about what information to report." *Id.* R994–406–401(1)(b). She is thus "accountable for the information in the claimant guide." *Mugleston v. Department of Workforce Servs.*, 2009 UT App 151, para. 5, 2009 WL 1567737 (mem.) (per curiam) (upholding a finding of fraud).

¶ 12 The Guide states, "All vacation, holiday, severance or separation pay you have received or will receive must be reported to the Claims Center." It also states, "Severance pay is defined as a payment made by an employer that would not have been made except for the severance of the employment relationship." Smith has never disputed that she would not have received the $18,960.74 "except for the severance of the employment relationship." In addition, the Guide advises a claimant with "questions about reporting work and earnings" to "contact the Claims Center." Smith also acknowledges that she never contacted the Department to clarify whether this substantial one-time payment was reportable. Smith was therefore charged with knowledge that the $18,960.74 payment was reportable income. Consequently, on the record before us, we cannot say that the Board's findings are unsupported by substantial evidence or that "its determination exceeds the bounds of reasonableness and rationality." *Johnson v. Department of Emp't Sec.*, 782 P.2d 965, 968 (Utah Ct.App.1989).

II. Exclusion of Smith's Representative

¶ 13 Smith's second claim on appeal concerns the exclusion of her representative from the hearing conducted by the ALJ. "Any individual claiming benefits in any proceeding before the department or its representatives or a court may be represented by counsel or any other authorized agent." Utah Code Ann. § 35A–4–103(3)(a) (Supp. 2010). The Board does not dispute that the ALJ erred in excluding Smith's husband from the hearing. The question on appeal is whether this acknowledged error requires reversal of the Board's decision.

¶ 14 But for the passage of the Utah Administrative Procedure Act (UAPA), *see* Utah Code Ann. §§ 63G–4–101 to –601 (2008), Smith would readily prevail. In 1988, we addressed this very question under pre-UAPA law in *Angell v. Board of Review of Industrial Commission*, 750 P.2d 611 (Utah Ct.App.1988). Like Smith, Angell challenged the Department of Employment Security's denial of unemployment benefits. *See id.* at 611. Under strikingly similar facts, the ALJ wrongfully excluded Angell's representative—also her husband—from the hearing on the ground that he was a witness. *See id.* at 611–12. As here, the Board found error but concluded that no prejudice had resulted. *See id.* at 612.

¶ 15 We reversed. *See id.* at 611. While acknowledging that it was "not obvious from the record what her husband could have done differently," we stated that "it is obvious that the presentation of petitioner's claim would

have been compromised by the last-minute decision to deny her the representative of her choice." *Id.* After reciting several "somewhat speculative concerns," we stated that "it is inescapable that petitioner would have been caught off guard, having earlier been told she could have anyone represent her, when informed—immediately before the hearing started—that in fact her chosen representative could not assist her." *Id.* at 613. Moreover, we stated, where the "problem is strictly one of the Department's own making and the rights involved are substantial ones . . . any doubts about whether petitioner was prejudiced should be resolved in her favor." *Id.* We also noted that UAPA had recently been passed but "does not govern this case since it does not apply to cases already pending at its effective date." *Id.* at 612 n. 2.

¶ 16 The case at bar presents the *Angell* issue anew, but now UAPA does govern. Accordingly, our consideration of the prejudice question is now controlled by UAPA and subsequent case law interpreting it. UAPA is clear that an appellate court may reverse an agency's decision "only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced" where, as here, "the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure." Utah Code Ann. § 63G–4–403(4)(e) (2008).

¶ 17 Because this language is similar to language in rules of procedure and evidence dealing with harmless error, our supreme court has held that in enacting this language, "the legislature intended that the same standard used for determining the harmfulness of error in appeals from judicial proceedings should apply to reviews of agency actions." *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 584 (Utah 1991), *superseded by statute on other grounds*, Utah Code Ann. § 59–1–610(1)(b) (Supp. 1993), *as recognized in 49th St. Galleria v. Tax Comm'n*, 860 P.2d 996, 999 (Utah Ct. App.1993). Thus, under UAPA, "an error will be harmless if it is 'sufficiently inconsequential that . . . there is no reasonable likelihood that the error affected the outcome of the proceedings.'" *Morton*, 814 P.2d at 584

(quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)). In addition, the burden of establishing prejudice on appeal belongs to the appellant. *See Mountain Fuel Supply Co. v. Public Service Comm'n*, 861 P.2d 414, 423 (Utah 1993) (holding that, under the UAPA prejudice standard, "the aggrieved party must be able to demonstrate how the agency's action has prejudiced it"). However, "any doubt about whether a petitioner was prejudiced is resolved in the petitioner's favor." *Adams v. Board of Review of Indus. Comm'n*, 821 P.2d 1, 7 (Utah Ct.App.1991) (citing *Angell*, 750 P.2d at 613).

¶ 18 The question before us then is whether, resolving any doubt in Smith's favor, Smith has demonstrated that the exclusion of her representative was sufficiently consequential that there is a reasonable likelihood that the error affected the outcome of the hearing. *See Morton*, 814 P.2d at 584.

¶ 19 Smith maintains that she was substantially prejudiced at the hearing by her husband's absence. She argues on appeal that she was "completely thrown" by the ALJ's exclusion of her husband. She also asserts that she had planned on her husband asking questions he had prepared, taking notes, and generally helping present her case to the ALJ. She further alleges that she was "very nervous about talking to a judge," "hesitant to question the ALJ," and generally uncomfortable representing herself in the hearing.

¶ 20 Our review of the record indicates that, even without her husband present, Smith capably articulated her arguments to the ALJ and questioned the Department's representative. In addition, the record shows that the ALJ elicited relevant facts from both sides. *See Nelson v. Department of Emp't Sec.*, 801 P.2d 158, 163 (Utah App. 1990) (recognizing no prejudice where claimant lacked counsel but was given an opportunity to present her story and to cross-examine witnesses). More to the point, Smith's "brief does not point to any particular evidence or argument that was not considered in the hearing before the [ALJ]." *See Slinger v. Board of Review of Indus. Comm'n*, 733 P.2d 122, 124 (Utah 1987). Even if Smith had been composed at the hearing, and her husband had been present to lend

moral support, give advice, take notes, and ably question Department representatives, the outcome of the hearing, so far as we can see from the record, would have been the same.

¶ 21 The essential facts were undisputed. Upon termination of employment, Smith received but did not report a lump-sum payment of $18,960.74. The Guide, by which Smith is bound, is clear that "[a]ll vacation, holiday, severance or separation pay [a claimant has] received or will receive must be reported to the Claims Center." It also states, "Severance pay is defined as a payment made by an employer that would not have been made except for the severance of the employment relationship." Smith would not have received the $18,960.74, however denominated, "except for the severance of the employment relationship." Therefore, she was required to report the payment, she was charged with knowledge that she was required to report it, but she did not report it. *See Ashdown v. Department of Workforce Servs.*, 2010 UT App 206, para. 6, 2010 WL 2961471 (mem.) (per curiam) (upholding finding of fraud on the ground that, having received the claimant guide, claimant "knew, or should have known" to report her gross wages).

 ¶ 22 Smith maintains that she lacked the subjective intent "to do anything dishonest." That may well be. But for purposes of unemployment claims, "[t]he intention to defraud is shown by the claims themselves which contain false statements and fail to set forth material facts required by statute." *Ross v. Department of Workforce Servs.*, 2010 UT App 102, para. 4, 2010 WL 1629004

(mem.) (per curiam) (quoting *Mineer v. Board of Review*, 572 P.2d 1364, 1366 (Utah 1977)).

¶ 23 We recognize that the exclusion of one's chosen representative from an administrative hearing of this type is a serious departure from statutorily-mandated procedure. We do not condone it. Nevertheless, the law governing fraudulent unemployment claims is uncompromising. In light of that law, and the uncontroverted facts described above, even resolving any doubt in Smith's favor, she has not demonstrated a "reasonable likelihood that the error affected the outcome of the hearing," *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 584 (Utah 1991).

## CONCLUSION

¶ 24 The Board's finding of fraud is supported by substantial evidence and did not exceed the bounds of reasonableness and rationality. In addition, Smith has not demonstrated that she was substantially prejudiced by the ALJ's wrongful exclusion of her representative during the hearing. We therefore affirm.

¶ 25 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and GREGORY K. ORME, Judge.