**Shirley MOYES, on Behalf of H. Jack MOYES, deceased, Plaintiff,**

**v.**

**STATE of Utah, State Insurance Fund, Department of Finance, and Second Injury Fund, Defendants.**

**No. 19236.**

Supreme Court of Utah.

April 5, 1985.

Roger Sandack, Salt Lake City, for petitioner.

Susan B. Diana, Gilbert Martinez, Salt Lake City, for respondents.

DURHAM, Justice:

This is a writ of review to set aside an order of the Industrial Commission ("the Commission") in a claim for workers' compensation benefits. The Commission affirmed findings of fact, conclusions of law, and an order denying the claim of H. Jack Moyes ("the claimant") for permanent partial disability payments on the ground that the industrial accident did not create additional permanent partial disability. The claimant is now deceased, and his wife, Shirley Moyes ("the petitioner"), is prosecuting this writ of review.[1] The State of

---

**1.** In October 1983, the claimant died as a result of medical problems unrelated to the November 5, 1979, fall. We granted, upon the stipulation of the parties, a motion to substitute Mrs. Moyes

Utah, which was the claimant's employer at the time of the fall, and the Utah State Insurance Fund (hereinafter jointly referred to as "the State") also join the petitioner in this writ of review. The State Insurance Fund paid certain sums for medical expenses and temporary compensation following the accident and seeks reimbursement from the Second Injury Fund. The finding of the Commission that the accident did not result in a permanent partial disability effectively precludes the State Insurance Fund from obtaining such reimbursement. U.C.A., 1953, § 35–1–69 (Supp. 1981). We affirm.

The resolution of only two of the issues raised by the petitioner and the State is dispositive of this review: first, whether there was evidence so persuasive and uncontroverted that the only reasonable conclusion that the administrative law judge and the Commission could have made was that the claimant was entitled to relief; and second, whether the administrative law judge and the Commission acted arbitrarily or capriciously by adopting portions of a medical panel report in the findings of fact. Common to both of these issues is the allegation by the petitioner and the State that the administrative law judge's findings of fact, conclusions of law, and order are arbitrary or capricious. We shall comment first on this general allegation and then address the two specific issues.

The following background facts are necessary to our discussion. The claimant had a long and tragic medical history. He suffered from arthritis and from numerous other health problems, including problems relating to his neck, heart, and back, which preexisted the industrial accident at issue in this case: a fall on November 5, 1979. On that date, while employed by the Utah State Department of Finance, the claimant slipped and fell on some steps at the Utah State Capitol Building. The claimant asserted that this fall resulted in an injury to his back which subsequently required surgery and precluded him from returning to work following the surgery.

The claimant testified before the administrative law judge that following the fall he did not seek immediate medical attention because he had an appointment with his physician already scheduled for early December, the following month. In addition, the claimant testified that the fall took place in the morning and that he found it necessary to take the afternoon off because of pain in his lower back. He further testified that during the following weeks, up to the date of his doctor appointment, this pain grew increasingly worse.

When the claimant saw his physician, Dr. Thomas Noonan, in December, he was advised that surgery would be appropriate. The claimant was admitted to the hospital on January 6, 1980. On January 7, 1980, a myelogram was performed on his back, indicating that he had a herniated disc with significant protrusion. On January 8, 1980, Dr. Noonan operated on the claimant's lower back. Dr. Noonan performed a second operation on the claimant's back in December 1980. In November 1981, Dr. Noonan referred the claimant to Dr. Robert Morrow. At that time, Dr. Morrow injected a narcotic into the claimant's spine to relieve the pain. Later that month, Dr. Morrow operated on the claimant's back.

The medical issues of this case were referred to a medical panel comprised of Dr. Frank Dituri and Dr. Edward Spencer. Notwithstanding the assertion to the contrary contained in the medical panel report, it appears that neither doctor reviewed all of the medical records of Dr. Noonan and Dr. Morrow. For example, neither Dr. Dituri nor Dr. Spencer reviewed the report of the myelogram performed on January 7, 1980. Nevertheless, the medical panel concluded that none of the claimant's impairment was due to the accident of November 5, 1979, and that all of his lower back

as a party. Prior to the new Utah Rules of Appellate Procedure, we have traditionally granted these motions for good cause. We note that now, however, the new rules contain a specific provision for substitution of parties, which became effective January 1, 1985. Utah R.App.P. 38.

problems were the result of long-standing chronic degenerative disease. Dr. Morrow, on the other hand, testified that the claimant suffered from a ten percent permanent partial impairment of the whole man to the back, five percent of which was attributable to the November 5, 1979, accident and five percent of which was attributable to preexisting conditions.

As noted above, the underlying error asserted by the petitioner and the State is that the administrative law judge's findings of fact, conclusions of law, and order are arbitrary or capricious. This assertion focuses on the following portion of the administrative law judge's findings of fact:

After considering the testimony of Dr. Morrow at the hearing and the medical panel report of Dr. Dituri and Dr. Spencer and all of the other aspects of the case, the Administrative Law Judge adopts the findings of the medical panel as his own which are as follows:

It is the opinion of the panel that no part of this is due to the industrial injury of November of 1979. After carefully reviewing all the records and taking a careful history from Mr. Moiyes [sic], it is our opinion that his low back problems are a result of long hears [sic] of chronic degenerative disease. We do not feel that the injury in November of 1979, for which he did not see a doctor and for which he did not take off work, caused any serious increase in this impairment. We do not believe that the surgery done in January of 1980 was a result of that injury but was the result of the progression of pre-existing disease.

1. There is no medically-demonstrable causal connection between the problems complained of and the industrial accident. The answer to this is explained above.

This last paragraph is contrary to the claimant's version of events and to the testimony of his medical witness, Dr. Morrow.

 In reviewing findings by the Commission, our general inquiry is whether the findings are arbitrary or capricious—*i.e.,* wholly without cause, contrary to the one inevitable conclusion from the evidence, or without any evidence to support them. *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888, 890 (1981).

 The petitioner and the State argue that it was arbitrary for the administrative law judge to adopt the following portion of the medical panel's findings:

We do not feel that the injury in November of 1979 ... caused any increase in [the claimant's] impairment. We do not believe that the surgery done in January of 1980 was a result of that injury but was the result of the progression of pre-existing disease.

1. There is no medically-demonstrable causal connection between the problems complained of and the industrial accident.

Our examination of the record, however, reveals that "there [is] competent, credible evidence to support a determination that, taking into account [the claimant's] previous history, the accident was not a significant factor in causing the condition which required corrective surgery." *Perchelli v. Industrial Commission,* 25 Utah 2d 58, 61, 475 P.2d 835, 837 (1970). Consequently, this finding is not arbitrary or capricious.

Prior to the November 5, 1979, fall, the claimant injured his back at least three times. In 1967, he injured his back while changing a tire, and he required hospitalization. In 1973, he injured his back as a result of slipping on some water and was again hospitalized. And in 1976, he again injured his back while lifting a desk. For this injury, the claimant was paid temporary total compensation in June 1979 for one week and five days. Prior to the November 5, 1979, fall, Dr. Noonan had treated the claimant for neck and back problems. At the time of the fall, the claimant had an appointment with Dr. Noonan for some time in December 1979. The three prior back injuries and the continual treatment by Dr. Noonan support the finding that the claimant had a chronic preexisting back disease.

■ The finding of a preexisting back disease and the finding that there was no causal connection between the problems complained of and the fall are also supported by the medical records. These records include a discharge summary dated February 6, 1980, concerning the claimant's January 1980 hospitalization. This summary states in part:

This 59-year-old white male from Salt Lake City has had history of back pain for *13 years*, was reinjured while changing a tire, with radiation to the left leg. He claims he has reinjured [his back] multiple times and mostly responded to conservative treatment; however, this time he has noted increased severity and numbness and dragging of the left foot *over the past six months. . . .*

(Emphasis added.) There is no reference to the November 5, 1979, fall; rather, it appears the claimant was admitted for treatment of a condition that had been progressing for quite some time before that incident.

Further, in a letter to the State Insurance Fund dated March 12, 1980, Dr. Noonan said, "Mr. Moyes' problems have really been a steady progression of events and I doubt if any one single episode, particularly that one in November was the thing that set it off although it cannot be entirely ruled out."

The history and medical records reflect only a portion of the facts in the record that support the administrative law judge's ultimate finding that the November 5, 1979, fall did not cause any serious increase in the claimant's impairment or require corrective surgery. Consequently, we hold that there is a reasonable basis in the record for the findings of the administrative law judge and of the Commission. *See IGA Food Fair v. Martin*, Utah, 584 P.2d 828, 830 (1978).

The petitioner and the State argue that this Court not only should reverse the Commission's order, but also should compel the Commission to award benefits. This suggestion is inherent in their argument that there was evidence so persuasive and uncontroverted that the only reasonable conclusion the administrative law judge and the Commission could have made was that the claimant was entitled to benefits. In *Vause v. Industrial Commission*, 17 Utah 2d 217, 407 P.2d 1006 (1965), we said:

This court cannot properly reverse the Commission and compel an award unless there is credible evidence without substantial contradiction which points so clearly and persuasively in plaintiff's favor that failure to so find would justify the conclusion that the Commission acted capriciously, arbitrarily or unreasonably in disregarding or refusing to believe the evidence.

*Id.*, 17 Utah 2d at 220–21, 407 P.2d at 1008 (footnote omitted).

■ In determining whether the evidence meets this standard, we must examine the evidence in the context of the entire record. The petitioner and the State, on the contrary, urge us to examine Dr. Morrow's testimony in isolation. Their position is that the administrative law judge's refusal to believe Dr. Morrow is "manifestly unreasonable because his testimony is based on uncontradicted, competent medical evidence, including x-rays, myelogram, and an operative report noting 'a large bulging disk', a hernia of the type usually associated with acute trauma." The evidence in the record in support of this assertion is tenuous. While the X-rays, myelogram, and surgical report are uncontradicted and are competent evidence, none of them demonstrate conclusively that the claimant's back troubles were of "the type usually associated with acute trauma," or more particularly, with the fall of November 5, 1979. That conclusion was Dr. Morrow's, and our examination of the record reveals that Dr. Morrow's conclusion was contradicted by the medical panel report, which was also "based on uncontradicted, competent medical evidence." With differing conclusions from the medical experts, we cannot reverse the Commission and compel an award; this is not a case of arbitrary refusal to accept uncontroverted testimony.

 The last issue raised by the petitioner and the State is whether the administrative law judge and the Commission acted arbitrarily or capriciously by adopting portions of the medical panel report in the findings of fact. It is not unusual for an administrative law judge and the Commission to adopt the findings of a medical panel. We have noted, however, that in "discharging [the Commission's] responsibility it [is] the prerogative and the duty of the Commission to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions [that] fairly and reasonably could be derived therefrom." *IGA Food Fair v. Martin*, 584 P.2d at 830. Consideration of the other evidence does not require that the administrative law judge or the Commission ignore or rewrite the medical panel report if they agree with it and deem it an adequate summary of their own findings. All that is required is some indication that the administrative law judge considered the other evidence and that his findings are fair and reasonable in light of all the evidence. Both the administrative law judge and the Commission specifically state in their final orders that they considered all of the evidence, and as indicated above, we are persuaded that the administrative law judge's findings are fair and reasonable in context.

 The petitioner and the State point to three allegedly erroneous statements in the findings: (1) that the claimant did not take off work because of the November 5, 1979, fall; (2) that the claimant did not see a doctor for injuries allegedly resulting from the fall; and (3) that the medical panel said it had reviewed all the records. We agree that all of these statements were controverted or contradicted by the record, but we do not agree that they render the remaining, critical findings of fact arbitrary or capricious. The determinative finding that "[t]here [was] no medically-demonstrable causal connection between the problems complained of and the [November 5, 1979, fall]" is supported by the record, and the discrepancies set forth above do not sub-stantially impair the adequacy of that support.

Affirmed. No costs awarded.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.