2011 UT App 248

**Ollie BLAIR, Petitioner,**

v.

**LABOR COMMISSION, Precision Tool, Great American Alliance Insurance, and Ohio Casualty Insurance, Respondents.**

**No. 20100646–CA.**

Court of Appeals of Utah.

July 29, 2011.

---

Richard R. Burke, Sandy, for Petitioner.

Alan L. Hennebold, Thomas C. Sturdy, and Kristy L. Bertelsen, Salt Lake City, for Respondents.

Before Judges THORNE, VOROS, and ROTH.

## MEMORANDUM DECISION

VOROS, Judge:

¶1 Petitioner Ollie Blair presents four challenges to an order of the Labor Commission (the Commission). The order denied his 2007 application for medical and disability compensation for a back condition resulting, he alleges, from a 1999 industrial accident. We affirm in part and reverse in part.

¶2 Blair's first and fundamental contention is that Respondents admitted causation in their answer and that therefore the Commission erred by adjudicating that issue. Specifically, Blair argues that his Application for Hearing "connected his L3/4 and L4/5 aggravations or injuries to the industrial accident," and that Respondents' answer contained an "admission that Mr. Blair's L3/4 and L4/5 were injured in the accident." We will uphold the Commission's decision on whether an affirmative defense was properly raised "unless the determination exceeds the bounds of reasonableness and rationality." *Barnard & Burk Group, Inc. v. Labor Comm'n*, 2005 UT App 401, ¶5, 122 P.3d 700 (citations and internal quotation marks omitted) (upholding Commission's ruling that a statute of limitations defense had not been pleaded with sufficient precision).

¶3 An answer filed in response to an Application for Hearing "shall admit or deny liability for the claim and shall state the reasons liability is denied." Utah Admin. Code R602-2-1C2. However, "[g]enerally, administrative pleadings are to be liberally construed." *Pilcher v. State Dep't of Soc. Servs.*, 663 P.2d 450, 453 (Utah 1983). We have reviewed the pleadings in this case with care. Neither Blair's application nor Respondents' answer focuses explicitly on whether the condition of Blair's L3–4 and L4–5 discs in 2007 was caused by his 1999 industrial accident. Blair's Application for Hearing contains six numbered paragraphs. None mentions his L3–4 and L4–5 discs. Paragraph 3 states, "The injuries/illness I sustained are: back." However, Paragraph 5 does state, "I claim: ... Recommended Medical Care." This is presumably a reference to the accompanying Summary of Medical Record, signed by Dr. Jodie K. Levitt.

That document inferentially alleges causation:

> What future medical treatment will be required as a result of the industrial accident? Surgical intervention in the form of left L3–4 and L4–5 laminotomy, decompression and possible discectomy has been recommended.

¶4 Respondents' answer does not mention Blair's L3–4 and L4–5 discs. It states, "The Respondents admitted liability for the Petitioner's claim. They understand that the issue is whether [Blair] should have surgery to treat his industrial injury." Indeed, as the answer points out, Respondents not only "admitted liability for Petitioner's claim," they paid out over $30,000 in medical expenses and disability compensation. The answer then proceeds to admit or deny each numbered paragraph in the Application. It states, "With regard to the allegations contained in paragraphs 1, 2, and 3, the Respondents admit that [Blair] had a compensable industrial accident on May 23, 1999, and that the accident injured [Blair's] back, but they deny that it occurred as alleged in the Application for Hearing." With respect to paragraph 5 of the Application, Respondents deny that Blair is entitled to "an award of medical expenses, recommended medical care, temporary total compensation, temporary partial compensation, permanent partial compensation, interest and travel expenses." Respondents then state that they "deny all allegations not specifically admitted."

¶5 Respondents also attach the report of Dr. Gerald Moress and summarize its conclusion by stating that "surgery is not appropriate to treat [Blair's] industrial injury." Respondents correctly point out that this statement leaves open the question of whether the condition of Blair's L3–4 and L4–5 discs resulted from his industrial injury. Nevertheless, Respondents' counsel candidly acknowledged in oral argument that at the pleadings stage, "the issue was surgery or not surgery," not whether Blair's condition was caused by the industrial accident.

¶6 Accordingly, we understand why Blair might read the answer as an admission of causation. However, in light of the rule that

"administrative pleadings are to be liberally construed," *Pilcher,* 663 P.2d at 453, the lack of precision in the pleadings generally, and Respondents' blanket denial of all allegations not specifically admitted, we cannot say that the Commission's refusal to treat the issue of causation as waived "exceeds the bounds of reasonableness and rationality," *see Barnard & Burk,* 2005 UT App 401, ¶ 5, 122 P.3d 700 (citation and internal quotation marks omitted).

¶ 7 This conclusion is reinforced by Respondents' pretrial admissions and statements in the hearing before the administrative law judge (the ALJ). Respondents' pretrial admissions identify, as a defense to be litigated, "Is the accident the cause of [Blair's] ongoing complaints of pain?" And in the hearing, Respondents' counsel challenged causation with respect to the L3–4 and L4–5 discs. He noted that the 1999 MRI showed a herniated disc at L5–S1, but that the most recent "MRIs show, amazingly enough, ... there is no herniated disc at L5–S1 anymore, and the problems now are at L3–4 and L4–5. And that's where Dr. Levitt ... wants to do her surgery." He continued, "[D]o we doubt that the accident hurt Mr. Blair's back? No. But I think there's a real question ... whether it caused the need for the surgery recommended by Dr. Levitt. And whether that surgery is reasonable and necessary." Later in the hearing, Respondents' counsel drew the same distinction between treatment for "the industrial injury" and treatment for "intervening events." And he specifically requested that the Medical Panel address whether the proposed surgery "is reasonable and necessary to treat the industrial injury. As opposed to other problems that Mr. Blair may have." These statements indisputably put causation at issue.

¶ 8 Blair's counsel responded by urging the ALJ to stick with the issue of whether surgery was reasonable and necessary and not get sidetracked with "intervening causes or accidents or anything else that [Respondents' counsel] has alluded to." But Blair's counsel did not assert that Respondents had already admitted causation, an omission that strikes us as understandable considering the lack of precision in the pleadings on this point. Clearly, at this stage in the proceeding the issues were still being sharpened.

¶ 9 Part and parcel of Blair's argument that Respondents admitted causation is his argument that Respondents "did not raise the affirmative defense of medical causation" with sufficient accuracy and detail to satisfy rule 602–2–1C2 of the Utah Administrative Code. As stated previously, we will uphold the Commission's decision on whether an affirmative defense was properly raised "unless the determination exceeds the bounds of reasonableness and rationality." *See Barnard & Burk Group, Inc. v. Labor Comm'n,* 2005 UT App 401, ¶ 5, 122 P.3d 700 (citations and internal quotation marks omitted).

¶ 10 Rule 602–2–1C2 requires that an answer "state all affirmative defenses with sufficient accuracy and detail that the petitioner and the Division may be fully informed of the nature and substance of the defenses asserted." Utah Admin. Code R602–2–1C2. However, by its own terms, this rule is limited to affirmative defenses. Blair has not persuaded us that causation is an affirmative defense. Generally, "a defense that merely controverts plaintiff's prima facie case is negative in character." *Jones, Waldo, Holbrook & McDonough v. Dawson,* 923 P.2d 1366, 1374 (Utah 1996). An "affirmative defense, in contrast, raises matter[s] outside the plaintiff's prima facie case." *Id.* (citation and internal quotation marks omitted). This court has stated that causation is not an affirmative defense. *See Fox v. Brigham Young Univ.,* 2007 UT App 406, ¶ 23, n. 3, 176 P.3d 446 (contrasting causation with intervening cause, which is an affirmative defense). Blair does not deny that these principles apply here or attempt to distinguish *Fox v. Brigham Young University,* 2007 UT App 406, 176 P.3d 446. Nor does he contend that Respondents' challenge to causation involves anything more than controverting an element of his prima facie case. Accordingly, we have no basis to reverse on this ground.

¶ 11 In any event, Blair does not allege any prejudice flowing from the Commission's actions. For example, he does not allege that Respondents' shift in position, as he sees it, lulled him into a false sense of security, thus

preventing him from placing before the ALJ or the Commission crucial medical evidence that would have created a reasonable likelihood of a different result. *See Smith v. Department of Workforce Servs.*, 2010 UT App 382, ¶ 17, 245 P.3d 758 (stating that an administrative agency's error is harmless " 'if it is sufficiently inconsequential that . . . there is no reasonable likelihood that the error affected the outcome of the proceedings' " (quoting *Morton Int'l, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581, 584 (Utah 1991))).

¶ 12 Next, Blair contends that, having determined to examine causation, the Commission applied the wrong legal standard. He asserts that the Commission applied the standard of medical causation when it should have applied the "natural result" standard. *Compare Allen v. Industrial Comm'n*, 729 P.2d 15, 27 (Utah 1986) (a claimant must "prove the disability is medically the result of an exertion or injury that occurred during a work-related activity"), *with Mountain States Casing Servs. v. McKean*, 706 P.2d 601, 602 (Utah 1985) (subsequent injury is compensable if it was "a natural result of a compensable primary injury," that is, the industrial accident was "a contributing cause" of the subsequent injury). This claim presents a question of law, which we review for correctness. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997).

▮ ¶ 13 The Commission adopted the Medical Panel's finding that Blair "suffered from a pre-existing degenerative condition unrelated to his employment that caused his continuing low-back problems." While not couched in the language of the "natural result" standard, the Commission's ruling satisfies and even exceeds that standard. If Blair's continuing low-back problems were unrelated to his industrial accident, a fortiori, they were not the natural result of his industrial accident. Therefore, even if the Commission recited the wrong standard—a point on which we express no opinion—any error

was harmless. *See In re S.H.*, 2005 UT App 324, ¶ 14, 119 P.3d 309 (finding harmless the court's error of applying a higher standard of proof than that required by law).

▮ ¶ 14 Next, Blair contends that the ALJ's interim findings were inadequate as a matter of law because they included no findings as to his eight-year history of leg and low back symptoms after the industrial accident. Specifically, the interim order contained no findings as to Blair's multiple bulging discs at L3–4 and L4–5, or his large disc herniation at L5–S1. Whether an administrative agency's findings are adequate is a legal determination that requires no deference. *See Adams v. Board of Review of Indus. Comm'n*, 821 P.2d 1, 4 (Utah Ct.App.1991).

¶ 15 In support of his claim, Blair cites *Nyrehn v. Industrial Commission*, 800 P.2d 330 (Utah Ct.App.1990). *Nyrehn* requires that findings of the Commission be sufficiently detailed to permit appellate review. *See id.* at 335. However, *Nyrehn* did not involve a challenge to interim findings of an ALJ, *see id.*, and Blair cites no case requiring an ALJ's interim findings to satisfy the appellate review standard.[1]

¶ 16 Any error was harmless in any event. *See, e.g., Smith v. Department of Workforce Servs.*, 2010 UT App, 382, ¶ 17, 245 P.3d 758. Blair complains that the ALJ's interim order contained no findings as to Blair's low back and leg symptoms for the eight years following the accident. This omission prejudiced him, Blair argues, because the Medical Panel "was left to guess what symptoms Mr. Blair exhibited" notwithstanding the medical records exhibit "contained over ninety pages of medical records." However, the record indicates that the Medical Panel received a copy of the medical records exhibit. In fact, the Medical Panel report specifically states that it was "[b]ased upon review of the medical/chiropractic records." Accordingly, we do not agree with Blair that because the interim findings were not more detailed "the

---

1. Distinguishing between interim findings and ultimate findings might seem like hairsplitting. But Blair relies heavily on the distinction in another context. In response to Respondents' argument that Blair failed to preserve his challenge to the interim findings and order, Blair argues that he "had no duty to object to the Interim Order." He describes interim orders as "essentially drafts" that "can be modified at any time" so that "to allow (or require) such objections would be an invitation (or command) to shoot at a moving target."

Panel was left to guess what injuries [Blair] sustained or aggravated in the accident."

¶ 17 Finally, Blair contends that the Commission's findings were inadequate as a matter of law because neither the Commission, the ALJ, nor the Medical Panel explained why the Panel "discounted or ignored or otherwise uncontradicted evidence of Mr. Blair's eight year history of leg and low back symptoms." Blair also contends that the Medical Panel "made no attempt to reconcile its statement that Mr. Blair's symptoms had 'essentially resolved' with the record evidence that demonstrated eight years of leg and low back symptoms." His specific complaint on appeal is that the Commission's findings were not sufficiently detailed to explain "the obvious contradictions between the medical evidence that showed Mr. Blair's history of leg and low back symptoms and the panel's conclusion that those symptoms resolved within months of the accident." Blair argues that the ALJ and the Commission abdicated their responsibility to find the facts, and that it was "error and folly" for them "to try to delegate that duty to a doctor."

¶ 18 The role of the Medical Panel is to "evaluat[e] medical evidence" and "advis[e] an administrative law judge with respect to the administrative law judge's ultimate fact-finding responsibility." Utah Code Ann. § 34A–2–601(1)(d)(ii) (Supp.2010). Although an administrative law judge is not bound by the panel's report, she may base her findings and decision on it. *See id.* § 34A–2–601(2)(e)(i). When the issue before the Commission is "primarily of causation, the importance of the . . . medical panel becomes manifest. It is through the expertise of the medical panel that the Commission should be able to make the determination of whether the injury sustained by a claimant is causally connected or contributed to by the claimant's employment." *Allen v. Industrial Comm'n,* 729 P.2d 15, 27 (Utah 1986) (citation and internal quotation marks omitted).

■ ¶ 19 "It is not unusual for an administrative law judge and the Commission to adopt the findings of a medical panel." *Moyes v. State,* 699 P.2d 748, 753 (Utah 1985). However, it is "the prerogative and the duty of the Commission to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions fairly and reasonably could be derived therefrom." *Id.* (alteration in original) (citation and internal quotation marks omitted). The ALJ or Commission need not "ignore or rewrite the medical panel report if they agree with it and deem it an adequate summary of their own findings. All that is required is some indication that the administrative law judge considered the other evidence and that his findings are fair and reasonable in light of all the evidence." *Id.* Thus, for example, in *Resort Retainers v. Labor Commission,* 2010 UT App 229, 238 P.3d 1081, the Commission properly decided to adopt the medical panel's findings but also "considered the evidence, which included reports in conflict with the medical panel's recommendations, before it adopted the findings of the medical panel." *Id.* ¶ 29.

■ ¶ 20 However, "for us to meaningfully review the findings of the Commission, the findings must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Nyrehn v. Industrial Comm'n,* 800 P.2d 330, 335 (Utah Ct.App.1990) (citation and internal quotation marks omitted). "[T]he failure of an agency to make adequate findings of fact on material issues renders its findings arbitrary and capricious unless the evidence is clear, uncontroverted and capable of only one conclusion." *Id.* (citation and internal quotation marks omitted).

■ ¶ 21 Here, Blair filed an objection with the ALJ challenging the Medical Panel's findings on the ground that they were "contrary to the undisputed medical evidence in the case." In particular, he assailed the finding that Blair's symptoms had "essentially resolved, including leg pain." On the contrary, he insisted, "the medical records showed at least twenty mentions of left leg problems." This issue was important to Blair's case because the Medical Panel concluded that Blair's 2007 issues with his L3–4 and L4–5 discs were unrelated to his 1999

industrial accident. This conclusion appeared to rest in part on the fact that his original symptoms had "essentially resolved" in 1999. The ALJ did not expressly dispose of Blair's objection.

¶ 22 Blair's motion for review placed the same issue before the Commission. The Commission's order summarized the Medical Panel's findings. However, like the ALJ, the Commission did not address Blair's objections. Instead, as its rationale for accepting the findings of the Medical Panel, it merely recited characteristics of medical panels generally:

> The Medical Panel's findings are persuasive because the panel is impartial in this matter, and because its findings are based on the evidence in the record. The Commission is also persuaded by the fact that the Medical Panel had the benefit of collegial review of Mr. Blair's relevant medical history. The Commission finds that the Medical Panel's consideration of the extent of Mr. Blair's work-related injury was appropriate and adopts the panel's conclusions.

This finding of the Commission is not sufficiently detailed, nor does it include sufficient subsidiary facts, to permit appellate review. Specifically, it does not explain the Commission's rejection of Blair's record-based challenge to the Medical Panel's finding that by the end of 1999 his symptoms had "essentially resolved, including leg pain."

¶ 23 Accordingly, we reverse and remand for the Commission to enter additional findings addressing Blair's factual challenge to the Medical Panel's finding that Mr. Blair's "symptoms essentially resolved, including leg pain" and that after 1999, "symptoms are documented only by chiropractors, who provide evidence of back pain only (not leg symptoms)." Having examined Blair's objection in greater detail, and having entered appropriate findings, the Commission may revise its ruling as appropriate.

¶ 24 Affirmed in part, reversed in part, and remanded for further proceedings.

¶ 25 WE CONCUR: WILLIAM A. THORNE JR., and STEPHEN L. ROTH, Judges.