IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Certified Building Maintenance and State Farm Fire and Casualty Co., | ) ) ) | MEMORANDUM DECISION |
| Petitioners, | ) ) | Case No. 20110549-CA |
| v. | ) ) | F I L E D |
| | ) | (August 23, 2012) |
| Labor Commission, Appeals Board of the Labor Commission; Enrique Antonio; and Workers Compensation Fund, | ) ) ) ) ) | 2012 UT App 240 |
| Respondents. | ) ) | |

-----

Original Proceeding in this Court

Attorneys:    Jeff Francis, Grand Junction, Colorado, for Petitioners
              Ryan L. Andrus, Murray, for Respondent Workers Compensation Fund
              Alan L. Hennebold, Salt Lake City, for Respondent Labor Commission
              Mark J. Sanchez, Salt Lake City, for Respondent Enrique Antonio

-----

Before Judges McHugh, Davis, and Christiansen.

McHUGH, Presiding Judge:

¶1     State Farm Fire and Casualty Co. (State Farm) seeks judicial review of an order from the Appeals Board of the Utah Labor Commission (the Board) that it must pay medical benefits to Enrique Antonio. We do not disturb the Board's decision.

¶2      Antonio injured his left knee on January 20, 2008, when he slipped on ice (the 2008 fall) while working for Certified Building Maintenance (CBM) as a commercial building cleaner.  Following an MRI, Antonio was diagnosed with a "[l]eft knee medial meniscus tear" and underwent arthroscopic surgery on September 4, 2008.  Antonio's medical claims arising out of that 2008 fall were insured by State Farm, which was CBM's insurer at the time.  After the surgery and six weeks of physical therapy, Antonio returned to work on November 3 but continued to suffer knee pain and swelling.

¶3      On February 9, 2009, Antonio's doctor gave him a steroid injection to temporarily relieve his pain.[1]  The injection alleviated the pain until February 12, 2009, when Antonio slipped on ice and fell onto his back while carrying chemicals for CBM (the 2009 fall).  The pain in his left knee spiked after the fall, but eventually subsided to its preinjection chronic level.  There is no dispute that both the 2008 and 2009 falls were work-related.

¶4      On March 4, 2009, Antonio's doctor recommended an MRI to determine whether Antonio had retorn his meniscus.  State Farm, which no longer insured CBM, declined the claim on the ground that the 2009 fall had resulted in a new injury.  CBM's current insurance carrier, Workers Compensation Fund, also refused to cover Antonio's medical expenses, asserting that the 2009 fall had merely aggravated the underlying injury caused by the 2008 fall.  Antonio filed a claim with the Utah Labor Commission (the Commission) on October 5, 2009.

¶5      After hearing evidence, the Administrative Law Judge (ALJ) entered Findings of Fact, Conclusions of Law & Interim Order (the Interim Findings).  Because of competing medical evidence about the cause of Antonio's knee injury, however, the ALJ requested review by a medical panel.  The medical panel's report (the Report) concluded that "there is a medically demonstrable causal connection between" the 2008 fall and Antonio's current knee injury and that there was no such causal connection between the 2009 fall and the injury.  State Farm objected to the admission of the Report on the

---

1. Antonio's testimony as to his expected pain relief was somewhat contradictory in that he testified that his doctor informed him both that "in two weeks [he] was not going to feel pain" and that "the pain was going to go away for two weeks."  The treating doctor's report indicates that the injection "worked for about a week."  The Administrative Law Judge found that Antonio was not in pain the day after the injection.

ground that the Interim Findings on which the Report was based were inadequate. In addition, State Farm argued that the Report ignored some of the medical evidence.

¶6 The ALJ rejected State Farm's objection to the Report, noting that the "objection goes to the weight the report should be given rather than its admission into the record." After reviewing the Report and determining that it was "supported by a preponderance of the evidence," the ALJ concluded that Antonio's knee injury after the 2009 fall "arose out of the" 2008 fall, which had medically caused his injuries. Thus, the ALJ concluded that State Farm was liable for Antonio's medical expenses. State Farm appealed to the Board, which affirmed the ALJ's decision in all respects, except for the award of attorney fees.[2]

¶7 State Farm argues that the Board erred in affirming the ALJ's conclusion that the 2008 fall had caused Antonio's knee injury, thus making State Farm responsible for coverage of Antonio's medical expenses. Specifically, State Farm challenges the ALJ's finding that Antonio "had no pain in his knee the day following the [February 9, 2009 steroid] injection although he continued to use his knee brace at work." State Farm contends that this finding rendered the Interim Findings insufficient for medical panel review of the cause of Antonio's injuries because it does not indicate that Antonio was pain free immediately before the 2009 fall. According to State Farm, this omission rendered the Report so unreliable that by considering it, the ALJ abused her discretion, abdicated her fact-finding duty, and violated State Farm's due process rights.

¶8 We first evaluate State Farm's claim that the Interim Findings were inadequately detailed, as a matter of law, because they did not include Antonio's pain level immediately before the 2009 fall.[3] The adequacy of an administrative agency's factual findings is "a legal determination that requires no deference." *See Olsen v. Labor*

---

2. The Board reversed the ALJ's award of attorney fees to Antonio and remanded that issue for further findings. Attorney fees are not at issue in this appeal.

3. State Farm also challenges the Interim Findings as based on insufficient evidence. However, because State Farm fails to marshal the evidence, as is required to challenge a factual finding on that ground, we do not consider its claim that there was insufficient evidence to support the ALJ's factual findings. *See Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 19, 164 P.3d 384. *See generally id.* ¶¶ 13-21 (distinguishing between inadequate findings and those that are unsupported by substantial evidence and warning that parties risk summary dismissal by declining to marshal the evidence when raising challenges to the sufficiency of the evidence).

20110549-CA                              3

*Comm'n*, 2011 UT App 70, ¶ 10, 249 P.3d 586 (internal quotation marks omitted). To support its claim, State Farm cites *Adams v. Board of Review of the Industrial Commission*, 821 P.2d 1 (Utah Ct. App. 1991). *Adams* requires that an agency's findings "'be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached'" so that this court may conduct appellate review. *Id.* at 5 (quoting *Milne Truck Lines, Inc. v. Public Serv. Comm'n*, 720 P.2d 1373, 1378 (Utah 1986)). However, *Adams* did not involve a challenge to the interim findings of an ALJ, and State Farm cites no decision requiring such findings to meet the standards designed to facilitate appellate review. *See Blair v. Labor Comm'n*, 2011 UT App 248, ¶ 15 & n.1, 262 P.3d 456 (mem.) (indicating that this court would not apply the standards discussed in *Adams* to an ALJ's interim findings absent any supporting authority), *cert. denied*, 268 P.3d 192 (Utah 2011).

¶9      Even if we were to consider State Farm's challenge to the adequacy of the Interim Findings on the merits, any presumed error was harmless. *See Smith v. Department of Workforce Servs.*, 2010 UT App 382, ¶ 17, 245 P.3d 758 (applying harmless error review to agency actions). State Farm complains that the ALJ's finding that Antonio "had no pain in his knee the day following the [February 9, 2009 steroid] injection" was inadequate because it did not specifically state that Antonio's "level of pain was at zero leading up to the moment of the February 12, 2009 incident with a *significant* increase in pain at the time of the February 12, 2009 incident." Thus, State Farm argues that the medical panel did not know that Antonio was pain free from February 10 until the 2009 fall, which occurred two days later, or that the 2009 fall resulted in a spike in his knee pain.

¶10      Contrary to State Farm's assertions, the Interim Findings accurately reflect that Antonio suffered chronic knee pain after the 2008 fall, that the pain subsided after the injection, and that the pain returned after the 2009 fall. State Farm has not indicated how a specific finding regarding Antonio's level of pain immediately before the 2009 fall would have aided the medical panel's review. Indeed, the medical panel based its conclusion primarily on its evaluation of Antonio's chronic pain over time, not on Antonio's specific pain level immediately before the 2009 fall.[4] While the medical panel acknowledged that the 2009 fall caused "increased pain," it also determined that the increase was a "temporary aggravation[]" that "returned to baseline" and that "[i]t was the baseline that was causally related to the [2008] work accident."

_____

4. State Farm further alleges that apparent discrepancies in testimony over the exact duration of the relief from pain after the steroid injection rendered the Interim Findings inadequate, but it does not indicate how a resolution of these discrepancies would change the medical panel's evaluation of the cause of Antonio's knee injury.

¶11    Further, the record as a whole supports the Board's observation that the Report was "persuasive because the panel is impartial in this matter and has the benefit of collegial review of Mr. Antonio's relevant medical history . . . [and] the panel included an orthopedic expert who examined Mr. Antonio's left-knee before the panel reached its conclusion." The medical panel reviewed the "[i]ndexed medical records . . . from 13 providers and medical facilities comprising 109 pages." Those reports included two medical opinions—including that of Antonio's treating physician—indicating that the 2009 fall merely exacerbated Antonio's existing knee injury. The panel also considered one physician's opinion that the 2009 fall caused a new injury, but found this opinion unpersuasive. Thus, we do not agree with State Farm that "the ALJ left out a key piece of evidence, thereby rendering her [Interim Findings] insufficient for the [medical panel's] review."[5] *Cf. Blair*, 2011 UT App 248, ¶ 16 ("[W]e do not agree . . . that because the interim findings were not more detailed 'the [medical panel] was left to guess what injuries [the claimant] sustained or aggravated in the accident.'").

¶12    State Farm next asserts that because the ALJ did not specifically state in her findings that Antonio was pain free leading up to the 2009 fall, she inappropriately delegated her fact-finding duty to the medical panel. In support, State Farm cites *Price River Coal Co. v. Industrial Commission*, 731 P.2d 1079 (Utah 1986), which held that an ALJ had improperly delegated its fact-finding duty when conflicting testimony about an employee's job description left the medical panel "confused as to some of the basic [job] duties," leading it to make "assumptions . . . which [were] unsupported by the evidence." *Id.* at 1084. *Price River Coal Co.* is inapplicable, however, because there is no factual dispute about Antonio's job duties or the facts of either the 2008 or 2009 falls. We have previously indicated that a medical panel may conduct its own medical examination and review of the medical record. *See Speirs v. Southern Utah Univ.*, 2002 UT App 389, ¶¶ 11-12, 60 P.3d 42.

> [T]o award compensation, the Commission must determine
> that an accident has occurred and that there is a causal
> connection between the accident and the injury claimed.

---

5. For the same reasons that we find any presumed error in the Interim Findings to be harmless, we also reject State Farm's assertion that the ALJ's ultimate Findings of Fact, Conclusions of Law, and Order incorrectly stated that the medical panel "had all the factual finding[s] to consider in rendering [its] opinion so [it] could consider the mechanism of injury of all the accidents to render [its] opinion." Because of the comprehensive nature of the medical panel's review, any presumed error in the ALJ's ultimate finding that its Interim Findings were adequate for the medical panel's review is harmless.

> This requires that the Commission make findings of fact and draw conclusions of law. In difficult cases, the opinions of a medical panel may be of assistance to the Commission in determining whether benefits should be awarded because the medical panel provides the Commission with the benefit of its medical expertise. The medical panel is empowered to study, take X-rays, and perform tests as it may determine necessary or desirable in rendering its opinion.

*Id.* ¶ 9 (citations and internal quotation marks omitted). However, the ALJ "may not abdicate its fact-finding responsibility to the medical panel." *See id.* ¶ 10 (citing *Price River Coal Co.*, 731 P.2d at 1084).

¶13    Here there is no indication that the ALJ's findings of fact were inadequate for the medical panel's review. As stated above, Antonio's pain relief, and the temporary nature thereof, was the expected result of the steroid injection and was not particularly relevant to the panel's ultimate conclusion that the 2008 fall was the medical cause of his injuries. Furthermore, the medical panel was provided the medical record and was permitted to conduct its own physical examination and interview of Antonio. *See* Utah Code Ann. § 34A-2-601(2)(a) (2011) (allowing a medical panel to "conduct a study" if "necessary or desirable"). Under these circumstances, the ALJ did not improperly delegate her fact-finding duty to the medical panel.

¶14    Finally, State Farm challenges the ALJ's admission of the Report over its objections, arguing first that the ALJ exceeded her discretion in admitting the Report, and alternatively that the admission of the Report violated its procedural due process rights.

¶15    State Farm first claims that the ALJ exceeded her discretion by declining to hold a hearing or provide additional findings to the medical panel based upon its objection to the Report. However, the statutory and administrative code provisions on which State Farm relies are expressly permissive. *See* Utah Code Ann. § 34A-2-601(2)(f)(i) (2011) ("If a written objection to a report is filed . . . the administrative law judge *may* set the case for hearing to determine the facts and issues involved." (emphasis added)); Utah Admin. Code R602-2-2(B) ("A hearing on objections to the panel report *may* be scheduled if there is a proffer of conflicting medical testimony showing a need to clarify the medical panel report . . . . [The ALJ] *may*, in lieu of a hearing, re-submit the new evidence to the panel for consideration and clarification." (emphasis added)).

¶16    The ALJ determined that an additional hearing was not necessary because "[t]here is nothing contained within [State Farm's] objection which would prevent the . . . [R]eport from being entered into the evidentiary record." The ALJ noted that the medical panel had considered, but rejected, State Farm's proffered medical opinion. Additionally, State Farm was afforded an opportunity to examine Antonio at the hearing to elicit any alleged inconsistent prior testimony from his deposition. Yet State Farm asserts that the ALJ's decision not to hold another hearing "exceeded the bounds of reasonableness and rationality." We cannot conclude that the ALJ acted unreasonably or irrationally where State Farm has not identified any new information that could have been presented at such a hearing or that would have altered the medical panel's analysis. Thus, we reject State Farm's claim that the ALJ's decision to consider the Report without holding an additional hearing was an abuse of discretion.

¶17    State Farm alternatively asserts that the ALJ violated its constitutional right to procedural due process when she exercised her discretion not to hold a hearing or take additional evidence based on State Farm's objections to the Report. *See* U.S. Const. amend. V ("No person shall . . . be deprived of life, liberty or property, without due process of law."); Utah Const. art. I, § 7 (same). "Due process challenges are questions of law that we review applying a correction of error standard." *Utah Auto Auction v. Labor Comm'n*, 2008 UT App 293, ¶ 9, 191 P.3d 1252 (internal quotation marks omitted). State Farm's procedural due process challenge, like its abuse of discretion challenge, is based on the premise that the discretionary procedures available to an ALJ to take additional evidence or hold a hearing in response to an objection to a medical report are constitutionally required. The level of procedure due in any legal setting is dependent upon a number of factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Color Country Mgmt. v. Labor Comm'n*, 2001 UT App 370, ¶ 34, 38 P.3d 969 (quoting *Mathews*, 424 U.S. at 335), *aff'd sub nom. Thomas v. Color Country Mgmt.*, 2004 UT 12, 84 P.3d 1201.

¶18    In *Lander v. Industrial Commission*, 894 P.2d 552 (Utah Ct. App. 1995), we applied those factors and determined that the Board has "the discretion whether or not to hold a hearing on objections to the report of a medical panel" and that such discretion "is not a violation of due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Utah Constitution." *See id.* at 555-57 (citing Utah Code Ann. § 35-1-77 (Supp. 1994) (current version at *id.* § 34A-2-601 (2011))). State Farm makes no attempt to distinguish *Lander*, and has not identified any new information that would have been helpful to the medical panel. Accordingly, we conclude that the Board did not violate State Farm's due process rights.

¶19    For the reasons indicated, we do not disturb the Board's decision.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶20    WE CONCUR:

_____
James Z. Davis, Judge

_____
Michele M. Christiansen, Judge